673 A.2d 361

COMMONWEALTH of Pennsylvania

v.

**Richard L. PAYTON, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 25, 1995.

Filed March 13, 1996.

Michael E. Duda, Harrisburg, for appellant.

Richard E. Guida, Assistant District Attorney, Harrisburg, for Commonwealth, appellee.

Before DEL SOLE, FORD ELLIOTT and OLSZEWSKI, JJ.

FORD ELLIOTT, Judge:

Appellant comes before us challenging the judgment of sentence entered April 12, 1995, following appellant's conviction at bench trial for the offenses of driving under the influence of alcohol and driving without headlights. Prior to trial appellant had filed a motion to dismiss the charges against him due to the Commonwealth's failure to bring him to trial within the time periods prescribed by Pennsylvania Rule of Criminal Procedure 1100, 42 Pa. C.S.A. (Rule 1100). The trial court held a hearing on the motion and denied same September 19, 1994. A motion for reconsideration was also denied. Appellant now brings his Rule 1100 contentions before this court. We find ourselves in agreement with appellant and will vacate the judgment of sentence and dismiss the charges against him.

We will very briefly review the procedural fact situation before us.[1] The Commonwealth itself concedes that appellant was not brought to trial within the limits set by Rule 1100 [2] and, by and large, adopts the procedural milieu delineated by the trial court. As we find that the trial court's depiction of the facts is supported by the record, we shall adopt it also and set it forth as follows:

> In the present action, the Commonwealth filed the criminal complaint against the defendant on March 12, 1993 and the case was not scheduled for jury trial until 542 days later on September 14, 1994. In computing this time, the parties agree that 67 days are not chargeable to the Commonwealth because that is the time during which the defendant was granted a continuance in order to acquire legal counsel.

1. The substantive facts pertaining to appellant's criminal violations are not before us at all.

2. Commonwealth brief at 7.

Pa.R.Cr.P. 1100(c)(3)(i). Even after deducting this period, 475 days passed before the defendant was brought to trial, well beyond the 365–day limit.

The following is a detailed outline of the procedural history in this case:

| | |
|---|---|
| 3/12/93 | – Complaint filed |
| 3/17/93 | – Citation filed/summons issued |
| 4/12/93 | – Summons returned unclaimed |
| 4/12/93 | – Warrant issued |
| 4/27/93 | – Case continued by District Justice—unknown reason |
| 5/ 6/93 | – Case continued on request of defendant |
| 7/13/93 | – Case continued by District Justice—unknown reason |
| 12/13/93 | – Case continued by District Justice—unknown reason |
| 6/ 9/94 | – Preliminary hearing held before District Justice, defendant bound over for trial, date for formal arraignment set for 7–21–94 |
| 7/21/94 | – Formal arraignment |
| 8/17/94 | – File received by Clerk of Courts from District Justice |
| 8/17/94 | – Case included on trial list for September 14, 1994 term (first available criminal trial week after arraignment) |
| 8/22/94 | – Defendant's Motion to Dismiss filed |
| 9/14/94 | – Defendant's case scheduled for jury trial (next scheduled criminal jury trial week) |

Trial court opinion, 04/06/95 at 2.

Of the delay described above, we are particularly concerned with the time appellant's case spent languishing in the district justice's office prior to the scheduling of the preliminary hearing:

Most of the delay in this case was the result of the failure of the District Justice's Office to schedule the defendant's case for a preliminary hearing. From the date the complaint was filed, March 12, 1993, until the preliminary hearing was held, June 9, 1994, 444 days elapsed of which 67 were excludable, leaving a total period of 377 days.

Trial court opinion, 04/06/95 at 4. Apparently, the particular district justice's office at issue was in a state of turmoil.

Although the parties present argument pertaining to delay following the scheduling of the preliminary hearing, we confine our holding today to the 377–day delay described above, because we may vacate on that basis alone. We now begin our analysis of the narrow issue thus framed.

We begin by noting the relevant section of Rule 1100:

(g) For defendants on bail after the expiration of 365 days, at any time before trial, the defendant or the defendant's attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated. A copy of such motion shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon.

If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain. If, on any successive listing of the case, the Commonwealth is not prepared to proceed to trial on the date fixed, the court shall determine whether the Commonwealth exercised due diligence in attempting to be prepared to proceed to trial. If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant.

Pa.R.Crim.P. 1100(g) (in pertinent part), 42 Pa.C.S.A.[3]

The central case relied upon by appellant, and the case most critical to our consideration today, is *Commonwealth v. Browne*, 526 Pa. 83, 584 A.2d 902 (1990). We begin by briefly summarizing the facts of this paramount case. The defendant in *Browne* was charged with driving under the influence of

**3.** Some of the cases we will be discussing were decided under an earlier version of Rule 1100. In fact, the Commonwealth raises an argument that the difference is important. We will grapple with that argument following our initial discussion. For now, we note that those cases decided under old Rule 1100 are at least instructive on the concept of "due diligence." *See Commonwealth v. Lopez–Melendez,* 435 Pa.Super. 62, 68–69 n. 8, 644 A.2d 1235, 1239 n. 8 (1994).

alcohol by criminal complaint filed April 6, 1987. Because of the vacation schedules of the prosecuting police officers, the preliminary hearing was not scheduled until June 17, 1987. Before then, the defendant requested, and was granted, a continuance until July 1, 1987. No district attorney entered an appearance at the district justice level, and no district attorney was present at the preliminary hearing.

The district justice found a *prima facie* case and bound the matter over for trial. Thereafter, on July 1, 1987, the district justice served upon the defendant a notice of arraignment, scheduling same for September 30, 1987. The district attorney's office was sent notice of the arraignment date on approximately July 8, 1987. Because of this arraignment date, trial could not be held until the next term of court, which commenced November 9, 1987. However, the 180–day period for commencing trial under Rule 1100 expired October 18, 1987. On August 31, 1987, pursuant to the requirements of old Rule 1100, the Commonwealth petitioned for an extension of time for commencing trial. This was denied. On November 23, 1987, the trial court granted defendant's motion to dismiss.

The Commonwealth appealed this decision to this court and we reversed. The basis of our reversal was that the Commonwealth had acted with due diligence and was not responsible for the delay caused by the district justice's untimely scheduling of the arraignment. We reasoned that the district attorney is generally not responsible for or charged with derelictions on the part of other agencies within the criminal justice system, reciting *Commonwealth v. Monosky*, 511 Pa. 148, 511 A.2d 1346 (1986), in support.[4]

**4.** *Monosky* involved a failure to timely commence trial under Rule 1100 because the district justice failed to transmit the transcript. The trial court granted the Commonwealth's petition for extension. This court reversed finding a lack of due diligence. In turn, the supreme court reversed, holding,

When the district attorney has timely filed an application for an extension and was unaware of inadvertent delay by the minor judiciary in processing the complaint, such judicial delay may justify granting the application.

*Monosky* at 153, 511 A.2d at 1348.

The defendant in *Browne* then appealed our decision to the supreme court arguing that pursuant to local county rule and practice, the district attorney possessed actual control over arraignment dates. Thus, had the district attorney's office maintained some sort of case tracking system, it was in the district attorney's actual power to schedule the arraignment in a timely fashion.

In broad and rather blunt language, the supreme court reversed this court. The court stated,

it is not unreasonable or erroneous to expect the District Attorney's Office to track arraignment dates on a routine basis to determine whether prosecution under Rule 1100 is thereby jeopardized. That office and those like it must, to be diligent, have simple systems in place to carry out the routine duties of the office. Sound reason requires no less. It would be easy to maintain a diary book where the relevant dates in a given prosecution could be promptly entered and checked against the Rule 1100 run date as a matter of course. Practicing lawyers must maintain docket books to make sure that they appear in court on the right date, file pleadings on time, complete discovery in a timely fashion, and do not run afoul of statutes of limitation. No less is required of a properly administered district attorney's office. Here, the District Attorney's Office 'blew it' and they did so because a routine diary or docket system was apparently not in place. That constitutes a failure to exercise due diligence. It has been held that 'due diligence' imposes the obligation on the government to 'read its mail and respond intelligently.' *United States v. Salzmann*, 417 F.Supp. 1139, 1155 (D.C.E.D.N.Y., 1976). We hold that due diligence likewise imposes on the government the duty to employ simple recordkeeping systems in circumstances such as this. Unlike *Commonwealth v. Monosky*, supra, the delay here was not the fault of the minor judiciary (the

district justice), but must be fully attributed to the district attorney's office itself.

*Browne* at 89–90, 584 A.2d at 906.

Instantly, the Commonwealth and the trial court both attempt to distinguish *Browne* in order to conclude that the Commonwealth exercised due diligence. It is put forth that in *Browne*, a case tracking system would have been effective because the district attorney's office had actual power to schedule an arraignment. In the case *sub judice*, however, even if the district attorney's office knew the status of the case, it was powerless to schedule the preliminary hearing. As the trial court stated,

> The broad pronouncements in the above cases suggest that a district attorney should act as a watchdog over the district justice offices in their county by 'tracking' all criminal cases which are commenced in the district justice office. However, we believe that under a narrow reading of these cases, *Browne* in particular, that there was no record keeping duty upon the District Attorney's Office here.
>
> In order to deny a Rule 1100 motion under the clear language of subsection (g), not only must it be shown that a district attorney acted with due diligence but also 'that the circumstances occasioning the postponement were beyond the control of the Commonwealth.' The District Attorney argues in this case, and we agree, that the actions of the District Justice Office here were beyond the control of the Commonwealth, i.e., the District Attorney. This fact distinguishes this case from *Browne*, where the Lancaster County District Attorney's Office had, under local rule, the responsibility to schedule and conduct arraignments. Both parties agree that in this county, the District Attorney's Office has no control over the scheduling of preliminary hearings in the district justice offices and thus no control over delays in those offices.

Trial court opinion, 04/06/95 at 10.

While we understand the distinction that the trial court draws, we believe that it does so improperly. As the trial

court admits, its reading of *Browne* is narrow. We believe, on the other hand, that the supreme court intended *Browne* to be read very broadly. Three factors lead us to this conclusion.

First, Justice Papadakos began his analysis in *Browne* by admonishing this court for its ever more restrictive interpretation of Rule 1100:

> We granted allocatur based on a continuing review of our appellate docket, because, blatantly put, we have become concerned that the Superior Court is more and more inclined to accept any and every excuse for failure to bring a criminal case to trial within the period prescribed by Rule 1100, and that this case presented the opportunity to prevent further emasculation of Rule 1100. For the reasons set forth below, we reverse.

*Browne* at 89, 584 A.2d at 905.

Second, in language we quoted earlier, Justice Papadakos wrote in very broad terms about what is expected of the district attorney's office. The supreme court's admonition to the District Attorney in *Browne* was clearly directed toward that office and those like it. Recognizing the Commonwealth's responsibility for bringing the defendant to trial within the time prescribed by Rule 1100, the supreme court's criticism was directed to the failure of district attorneys' offices to maintain a tracking system to avoid Rule 1100 problems. We believe that the supreme court views such tracking as a necessary obligation of due diligence.

Third, the defendant in *Browne* attempted to distinguish the situation there from other instances of judicial delay, such as *Monosky*, because in other cases the district attorney had not been "charged" for the time lost to judicial delay. The distinction that the defendant in *Browne* relied upon was that under local rule and practice, the district attorney had actual power to schedule arraignments; thus had the district attorney monitored the case, that office could have timely scheduled the arraignment. Justice Papadakos observed this distinction and responded as follows:

In view of such power of control that resides with the District Attorney, Appellant argues that the Superior Court conclusion that the delay here was caused by the district justice and the scheduling policies and practices of the Court of Common Pleas amounts to nothing more than sophistry. *In view of our disposition of this appeal below, it is unnecessary to comment on this argument of Appellant,* but it is obvious that Appellant's contentions provide a lucid explanation of what happened in the instant case consistent with the District Attorney's extensive responsibilities under Local Rule 303.

*Browne* at 87 n. 1, 584 A.2d at 904–05 n. 1 (emphasis added). It seems abundantly clear from this comment by the court that the fact that the district attorney had actual power to schedule arraignments was not the pivotal factor in the court's holding. If this is the case, then *Browne* obviously was intended to establish a broad case tracking requirement for a finding of due diligence, even where the district attorney's office might ultimately be excused from the delay.

Such a requirement would seem to make sense instantly. Although the district attorney had no power to set a date for appellant's preliminary hearing, had that office been monitoring cases such as appellant's, the district attorney could have notified the district justice that the Rule 1100 deadline was drawing near. As it was, no such effort was expended. As set out earlier, under Rule 1100 it is the Commonwealth's responsibility to bring the defendant to trial within the allotted time and that time begins to run from the filing of the Complaint.

Furthermore, if we interpret Rule 1100 as the Commonwealth and the trial court have done, we effectively eliminate from Rule 1100 time calculations any time period that a particular case resides with the district justice. This is so even with the full knowledge of the Commonwealth so long as the Commonwealth possesses no actual power to move the case along. We will not countenance this effective emasculation of the Rule in so many cases; in particular, we will not

tolerate such an interpretation in light of the rather blunt directive given to us by the supreme court in *Browne.*

In the final analysis, we conclude that our supreme court intended *Browne* to be broadly interpreted. The trial court concedes that its reading is a narrow one. On this basis we must disagree.

One final matter merits our attention before we conclude. The Commonwealth has noted that *Browne* was decided under an older version of Rule 1100. Under that earlier iteration, Rule 1100 read, in pertinent part:

(c)(1) At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial. . . .

(c)(3) Such motion shall set forth facts in support thereof, and shall be granted only upon findings based upon a record showing that trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth and, if the delay is due to the court's inability to try the defendant within the prescribed period, upon findings based upon a record showing the causes of the delay, and the reasons why the delay cannot be avoided.

Former Pa.R.Crim.P. 1100(c)(1) and (c)(3). We also recall the language of current Rule 1100:

If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain.

Rule 1100(g) (in pertinent part).

Previously, the burden on the Commonwealth was to demonstrate that it had exercised due diligence. Current Rule 1100 adds a second requirement: the Commonwealth must demonstrate both *due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth.* The Commonwealth appears to be arguing that this additional requirement somehow distinguishes

*Browne.* The intimation seems to be that, previously, the "beyond the control" component was a part of the "due diligence" component and that *Browne*'s tracking requirement was meant to address that element of due diligence. In *Browne* the scheduling of arraignment dates was not beyond the control of the Commonwealth, and a case tracking system would have prevented the Rule 1100 violation. Instantly, however, the actual scheduling of preliminary hearings is beyond the control of the Commonwealth. The Commonwealth implies that, therefore, case tracking would have no efficacy. Frankly, we find this argument to be somewhat illusory.

This court has already applied the holding in *Browne* to a situation arising after the adoption of current Rule 1100. In *Commonwealth v. Lopez–Melendez, supra,* we applied the holding of *Browne* in a similar fact situation. *Lopez–Melendez* involved a drunk driving offense in Lancaster County. In that county there is an "Office of the Impaired Driver Program" which is apparently responsible for evaluating drunk driving cases for Accelerated Rehabilitative Disposition (ARD). The delay in *Lopez–Melendez* occurred when the defendant's case languished in the Office of the Impaired Driver. Quoting both new Rule 1100(g) and *Browne,* we reversed the trial court, finding that the district attorney had failed to exercise due diligence. *Lopez–Melendez* does contain the same distinction from the instant case as *Browne.* Because the district attorney has the actual power to administer the ARD program, had the district attorney been tracking cases in the Office of the Impaired Driver, the district attorney could have actually moved the case along. Still, we do not view this as a distinction with a difference.

Simply stated, even if the delay instantly is beyond the control of the Commonwealth, this does not excuse an initial showing of due diligence as required by the rule. Had the district attorney been tracking cases in the district justice's office, the district attorney could have notified the district justice that the Rule 1100 deadline was approaching. Had the district attorney so notified the district justice and then the

case had not gone forward, then we would agree that matters were "beyond the control of the Commonwealth" and that the district attorney had done everything possible to move the case along (exercised due diligence).

Ultimately, we hold that the case tracking requirement of *Browne* addressed more than just a "beyond the control" element of due diligence. Rather, we find that it was crafted to ensure "due diligence" as a whole. In sum, we do not find that the amendment of Rule 1100 affects our result here. We are compelled to vacate.

Accordingly, having found merit in appellant's appeal, we vacate the judgment of sentence and dismiss the charges against appellant. Jurisdiction relinquished.