565 A.2d 770

**COMMONWEALTH of Pennsylvania**

v.

**Frank NELLOM, Appellant.**

Superior Court of Pennsylvania.

Submitted May 15, 1989.

Filed Aug. 29, 1989.

Reargument Denied Nov. 13, 1989.

Mitchell S. Strutin, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CAVANAUGH, POPOVICH and HOFFMAN, JJ.

HOFFMAN, Judge.

This is an appeal from a judgment of sentence for rape and involuntary deviate sexual intercourse. Appellant contends, *inter alia*, that the trial court erred in (1) granting the Commonwealth an extension of time under Pa.R.Crim.P. 1100, and (2) ruling that appellant's character witness could be cross-examined as to her knowledge of his prior robbery conviction.[1] For the following reasons, we agree with appellant's second contention and, accordingly, we vacate the judgment of sentence and remand for a new trial.

On March 28, 1987, appellant was arrested for robbery, rape, and involuntary deviate sexual intercourse arising out of an incident at the Pleasure Chest, an adult boutique in Philadelphia. On October 20, 1987, appellant was convicted by a jury of robbery, but because the jury was "hopelessly deadlocked" on the remaining charges, a mistrial was declared on those charges. Following the denial of appellant's post-trial motions on the robbery charge, he was sentenced to a one-to-four-year term of imprisonment.

Appellant's retrial on the rape and IDSI charges was initially listed for December 14, 1987. The trial was continued a number of times, and, on March 2, 1988, the Commonwealth filed a petition to extend the date for retrial pursuant to Rule 1100(c)(1). The court delayed decision on the petition until the time of trial. Appellant came to trial on May 9, 1988, and a hearing was held on the Commonwealth's petition. On that same day, the court granted the petition, the run date was extended to June 1, 1988, and

---

1. Appellant also contends that the trial court erred in (3) improperly charging the jury on the definition of forcible compulsion; (4) permitting the Commonwealth to introduce evidence contradicting appellant's exculpatory version of events; and (5) refusing to conduct a more extensive inquiry into the racial biases of potential jurors. Additionally, he claims that (6) the prosecutor improperly used his peremptory challenges to strike blacks from the jury panel; (7) his sentence was excessive, and (8) trial counsel was ineffective for failing to (a) object to the prosecutor's cross-examination of him concerning the truthfulness of his testimony; and (b) raise in post-trial motions the issue of the trial court permitting him to be tried in prison clothing. Because of our disposition of appellant's second claim, we need not address these issues.

appellant proceeded to trial. On May 10, 1988, following a trial by jury, appellant was found guilty of rape and IDSI. Post-verdict motions were filed and denied. On October 12, 1988, appellant was sentenced to an aggregate term of imprisonment of twelve-to-thirty years.[2] On October 18, 1988, appellant filed a Petition for Reconsideration of Sentence. This appeal followed the denial of the petition with present counsel appointed to replace trial counsel.

Initially, appellant contends that the trial court erred in granting the Commonwealth's petition for an extension of time pursuant to Pa.R.Crim.P. 1100. Appellant notes that, under Rule 1100(e)(1), the Commonwealth had 120 days in which to bring him to trial.[3] Appellant argues that, because a new trial did not commence until May 9, 1988, well beyond the February 16, 1988 mechanical run-date, and because the Commonwealth did not prove due diligence in bringing him to trial pursuant to Rule 1100(c)(3),[4] he is

2. The court directed that this term was to run consecutive to the sentence imposed earlier on the robbery charge.

3. When the mistrial was declared on October 20, 1987, Rule 1100 provided, in relevant part:

(e)(1) When a trial court has granted a new trial and no appeal has been perfected, a new trial shall commence within one hundred and twenty (120) days after the date of the order granting a new trial.

*Id.* at 1100(e)(1).

4. Rule 1100(c)(3) provided, in relevant part:

(3) Such [Commonwealth motion for extension] shall set forth facts in support thereof, and shall be granted only upon findings based upon a record showing that trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth and, if the delay is due to the court's inability to try the defendant within the prescribed period, upon findings based upon a record showing the causes of the delay and the reasons why the delay cannot be avoided.

*Id.* at 1100(c)(3).

Rule 1100 was amended on December 31, 1987, and again on September 30, 1988. Appellant's sole argument is that the Commonwealth failed to prove its due diligence in bringing him to trial. This argument is premised on Rule 1100(c) as it existed prior to December 31, 1987. The December 31, 1987 version of the Rule makes no express provision allowing the Commonwealth to prove due diligence. Because appellant makes no argument concerning the applicability of

entitled to be discharged. The Commonwealth, on the other hand, maintains that they were properly granted an extension because the undisputed evidence in the record establishes that they were duly diligent in proceeding to try appellant because the delays beyond the 120 days were caused by appellant's requested continuance, his failure to be brought down, and judicial backlog. We agree.

In *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976), our Supreme Court stated:

> [T]he trial court may grant an extension under rule 1100(c) only upon a record showing: (1) the "due diligence" of the prosecution, and (2) certification that trial is scheduled for the earliest date consistent with the court's business; provided that if the delay is due to the court's inability to try the defendant within the prescribed period, the record must also show the causes of the court delay and the reasons why the delay cannot be avoided.

*Id.*, 469 Pa. at 222, 364 A.2d at 1349–1350. The Commonwealth has the burden of showing, by a preponderance of the evidence, that it has met the due diligence requirements of Rule 1100(c). *Commonwealth v. Byrd*, 325 Pa.Super. 325, 331, 472 A.2d 1141, 1145 (1984). Moreover, in reviewing the trial court's ruling, this court must consider only the Commonwealth's evidence and so much of appellant's evidence, as read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Hollingsworth*, 346 Pa.Super. 199, 206, 499 A.2d 381, 384 (1985), *allocatur denied*, 515 Pa. 575, 527 A.2d 536 (1987).

At the hearing on the petition to extend the time of retrial, the Commonwealth moved the Quarter Sessions file into evidence. Appellant failed to introduce any evidence to challenge the accuracy of the facts contained in the Quarter Sessions file. It is well-settled that "a finding of due diligence may be based entirely on judicial notice taken by the hearing court of facts contained in uncontested notations in court records." *Id.* 346 Pa.Super. at 213, 499 A.2d

the December 31, 1987 amended rule to his case, we will limit our discussion to the rule before the December 31, 1987 amendment.

at 387. *See also Commonwealth v. Lafty,* 333 Pa.Super. 428, 482 A.2d 643 (1984) (due diligence established by notations in court record); *Commonwealth v. Byrd,* 325 Pa.Super. 325, 472 A.2d 1141 (1984) (due diligence and judicial delay established by notations in Quarter Sessions file moved into evidence by Commonwealth). The Quarter Sessions file and record reveal the following facts.

The retrial was initially listed for December 14, 1987. At a pre-trial listing on December 2, 1987, the calendar judge continued the case until January 6, 1988, pending disposition of post-trial motions and sentencing on the robbery charge. The court also certified January 6, 1988, as the earliest possible date consistent with the court's business. At the request of appellant's counsel, on January 6, 1988, the court continued the case to February 9, 1988, so that counsel could obtain the notes of testimony from the first trial. Accordingly, the mechanical run-date of February 16, 1988 was automatically extended thirty-four days to March 22, 1988. *See Commonwealth v. Sanders,* 380 Pa.Super. 78, 84, 551 A.2d 239, 242 (1988); Pa.R.Crim.P. 1100(d)(3)(ii).[5]

On February 9, 1988, the last listing before the extended run-date, appellant was sentenced on the robbery charge. The court then listed the remaining charges for trial on April 27, 1988, certifying it as the earliest possible date (EPD).[6] Because the case was scheduled for the earliest possible date consistent with the court's business, this time is not chargeable to the Commonwealth. *See*

---

**5.** Rule 1100(d)(3) states in relevant part:
   (d) In determining the period for commencement of trial, there shall be excluded therefrom:
   \*   \*   \*   \*   \*   \*
   (3) such period of delay at any stage of the proceedings as results from:
   (i) the unavailability of the defendant or his attorney:
   (ii) any continuance granted at the request of the defendant or his attorney.

**6.** We note that the Commonwealth need not establish its due diligence for the listings that preceded the final listing before expiration of the mechanical run-date. *Commonwealth v. Hollingsworth,* 346 Pa.Super. 199, 499 A.2d 381 (1985); *Commonwealth v. Burke,* 344 Pa.Super. 288, 496 A.2d 799 (1985).

*Commonwealth v. Byrd, supra.* On April 27, 1988, the court further continued the case to May 2, 1988, certifying that date as the earliest possible date. This continuance was ordered because, although a "bringdown order" had been issued for appellant's appearance, he was not brought down from the Graterford State Correctional Institution. Likewise, on May 2, 1988, the court continued the case to May 6, 1988, because, although a writ had been issued for appellant's appearance, he again was not brought down. The court certified May 6 as the earliest possible date. Because the May 2 and May 6, delays resulted despite the issuance of a bringdown and a writ for appellant's appearance, they are not chargeable to the Commonwealth. *See Commonwealth v. Colon,* 317 Pa.Super. 412, 464 A.2d 388 (1983) (due diligence exercised notwithstanding delay caused by failure of court's warrant service to serve bench warrant on appellant); *Commonwealth v. Harris,* 315 Pa. Super. 544, 462 A.2d 725 (1983) (no rule 1100 violation where delay caused by trial coordinator's failure to prepare revised "bringdown" order). The record reveals that the final continuance from May 6, to May 9, 1988, was caused by excludable judicial delay, because the assigned judge was then engaged in a jury trial. *See Commonwealth v. DeBooth,* 379 Pa.Super. 522, 531, 550 A.2d 570, 575 (1988). Accordingly, because each continuance after the extended run-date of March 22, 1988 was caused either by appellant's failure to appear despite the Commonwealth's diligence or judicial delay, the trial court properly granted the Commonwealth's petition for extension of time. *See Commonwealth v. Gibbons,* 379 Pa.Super. 285, 549 A.2d 1296 (1988).

Appellant next contends that the trial court erred in ruling that his character witness could be cross-examined regarding appellant's previous conviction for robbery, which arose out of the same incident as the sexual offenses for which he was being tried. Appellant argues that the court's ruling denied him his right to present evidence of good character. Appellant's offer of proof on this issue, and the trial court's ruling, occurred during the following exchange:

Mr. Mallon [appellant's counsel]: Judge, I have a character witness and I just wanted to make it clear that in the first trial in this matter, that this man was convicted of one of the charges. And obviously, that ought not to be a subject of cross-examination of a character witness, since it is the same incident.

Mr. Sax [prosecution]: I strenuously disagree. The defendant's reputation is different once he has been convicted of a crime of crimen falsi. Obviously that conviction is not admissible generally. And I have no intention of telling them that, that is why I didn't ask him what the jury did in this other case. This reputation that is going to come in, I want to know if the other members of the community know about his robbery conviction.

Mr. Mallon: I object. It is the same incident. The question is whether this incident happened. And his testimony is he is innocent. The jury should know aside from the allegations this woman made against him, his reputation—

THE COURT: The questions are not what caused his reputation six months now [sic], it is what is his reputation now.

Mr. Mallon: Your Honor is ruling—that may be his position. You are ruling that he is allowed to cross-examine him about the fact that he was convicted in this very same case?

THE COURT: Yes, on the robbery.

Mr. Mallon: I strenuously object to that.

Mr. Sax: I wouldn't say from the same case. I will say robbery—

Mr. Mallon: Well,.... It is the very same case. I won't call the witness under those circumstance[s]. But I will take an exception.

THE COURT: Very well.

N.T. May 10, 1988, at 168–69.

Appellant maintains that when a character witness testifies, that witness should be subject to cross-examination

only about convictions that arose out of offenses occurring *prior to* the commission of the alleged offense.[7] Because the trial court would have allowed questioning regarding a robbery that was part of the *same* episode as the instant offenses, appellant submits that its ruling was erroneous, and that it deprived him of his ability to present character evidence. The Commonwealth, on the other hand, would have us conclude that even though the robbery charge arose out of the same criminal incident as the sexual offenses, the mere fact that a conviction was obtained on the robbery charge prior to the retrial on the sexual offenses renders it a prior conviction for purposes of impeaching a character witness. We believe that the Commonwealth's approach misconstrues the purpose and scope of character evidence.

Pennsylvania courts have long recognized the importance of character or reputation evidence in criminal trials. The purpose of this evidence is to show that the accused possesses character traits that are at odds with the alleged criminal behavior. As we noted in *Commonwealth v. Luther*, 317 Pa.Super. 41, 463 A.2d 1073 (1983):

> Such evidence has been allowed on a theory that general reputation reflects the character of the individual and a defendant in a criminal case is permitted to prove his good character in order to negate his participation in the offense charged.... The rationale for the admission of character testimony is that an accused may not be able to produce any other evidence to exculpate himself from the charge he faces except his own oath and evidence of good character.

*Id.*, 317 Pa.Superior Ct. at 49, 463 A.2d at 1077 (citations omitted); *see also* Pa.Stand.Jury Inst. § 3.06(3) ("The law recognizes that a person of good character is not likely to commit a crime which is contrary to his nature.") A defendant who presents character testimony runs certain risks, however, character witnesses, like other witnesses, can be

_____

7. Our research has revealed no case on whether a *prior* conviction is determined by the date of the offense or the date of conviction in the context of character evidence.

subjected to cross-examination. *See Commonwealth v. Scott*, 496 Pa. 188, 195, 436 A.2d 607, 611 (1981). Such cross-examination may include questions regarding the defendant's prior convictions for crimes involving the relevant character trait. *See id.; see also Commonwealth v. Vander Weele*, 356 Pa.Super. 152, 157–58, 514 A.2d 189, 191 (1986). The purpose of this type of impeachment is to test the accuracy and completeness of the witness's knowledge of the defendant's reputation. *Commonwealth v. Scott, supra*, 496 Pa. at 192, 436 A.2d at 609; *see also Commonwealth v. Peterkin*, 511 Pa. 299, 318, 513 A.2d 373, 382–83 (1986) ("a character witness may be cross-examined regarding his knowledge of particular acts of misconduct by the defendant to test the accuracy of his testimony and the standard by which he measures reputation."); *Commonwealth v. Hammond*, 308 Pa.Super. 139, 149, 454 A.2d 60, 65 (1982); *Commonwealth v. King*, 287 Pa.Super. 105, 108, 429 A.2d 1121, 1122–23 (1981). It is settled that evidence of a defendant's character must relate to his reputation "at or about the time the offense was committed." *E.g. Commonwealth v. Luther, supra*, 317 Pa.Superior Ct. at 50, 463 A.2d at 1077–78; *see also Commonwealth v. White*, 271 Pa. 584, 587, 115 A. 870, 872 (1922); McCormick, *Handbook on the Law of Evidence*, § 191, at 456 (2d Ed.1972) (character at time of alleged crime bears mostly on inference of innocence or guilt—reputation evidence confined to reputation at that time or reasonable time before).[8]

8. We note that many jurisdictions have held that reputation evidence may not rebutted with convictions that occurred *subsequent* to the offense presently charged. *See Lawrence v. State*, 441 So.2d 1021, 1025–26 (Ala.Cr.App.1983) (proper cross-examination of character witness does not encompass misconduct after commission of offense charged); *State v. Rivera*, 612 P.2d 526 (Haw.1980) (point in time at which accused's character for peacefulness and nonviolence would be relevant is at time of or prior to date of commission of alleged offense); *White v. State*, 290 So.2d 616, 618 (Miss.1974) (state not allowed to cross-examine character witness as to any misconduct allegedly committed by accused subsequent to date of the crime for which accused was being tried); *State v. Carson*, 239 S.W.2d 532, (Mo.1951) (character witnesses may be cross-examined to test good faith and credibility for acts imputed to defendant occurring before date of offense for which he is on trial); *State v. Howard*, 57 Ohio App.2d 1, 385 N.E.2d 308, 314 (1978) (error to permit state to impeach

■ Here, appellant's character witness would have testified to the fact that, at the time the criminal episode occurred, his reputation in the community was that of a nonviolent, peaceful person. The inference that appellant wanted to raise was that because he had a good character, it was not likely that he committed the offenses complainant said he did. The Commonwealth could have cross-examined the character witness to show that his knowledge of appellant reputation was unreliable or incomplete. Evidence of the subsequent robbery conviction, however, would not in anyway call into question the reliability of the character witness's testimony because, at the time the sexual offenses were allegedly committed, his reputation did not include a conviction for robbery. This is so, because the relevant time period that the witness would be speaking to only would include the time period up until the occurrence of the alleged offenses. Therefore, the trial court's ruling allowing the prosecutor to challenge the witness's reputation testimony, by focusing on the robbery conviction, which arose out of an incident contemporaneous with the sexual offenses, and in no way was relevant to impeach the accuracy of the character witness's testimony, was erroneous.[9]

with character at subsequent period when good character evidence offered concerned period prior to and up to commission of alleged offense); 5 Wigmore, Evidence § 1618 at 594–598 (Chadbourn rev. 1974). According to these states, the relevant inquiry is the defendant's reputation at the time the alleged offenses took place and not at the time of trial.

9. We find further support for our conclusion by looking to the analogous context of computing prior record scores for sentencing purposes. In this area, both the legislature and the courts have had occasion to construe the term "prior conviction." The 1988 sentencing guidelines state that "prior conviction" means "previously convicted" as defined in 42 Pa.C.S.A. § 2154(a). *See* 204 Pa.Code § 303.7, *reprinted following* 42 Pa.C.S.A. § 9721(e) (Purdon's 1982 & Supp. 1989). 42 Pa.C.S.A. § 2154(a)(2), in turn, defines "previously convicted" as follows:

(g) ... for purposes of this section *"previously convicted"* or "adjudicated delinquent" *shall include any finding of guilt* or adjudication of delinquency whether or not sentence has been imposed or disposition ordered *prior to the commission of the current offense.*
*Id.* at § 2154(a)(2). This definition is substantially similar to that contained in the prior sentencing guidelines. *See* Commission on Sentencing § 303.7 (1982). In construing the prior guidelines, this

Finally, we find that the court's ruling was not harmless error. *See Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978). In Pennsylvania, the importance of good character evidence is well-recognized. "[E]vidence of good character is to be regarded as evidence of substantive fact just as any other evidence tending to establish innocence and may be considered by the jury in connection with all of the evidence presented in the case on the general issue of guilt." *Commonwealth v. Luther, supra,* 317 Pa.Superior Ct. at 49, 463 A.2d at 1077. Character evidence is substantive and positive evidence, not a mere "make weight" to be considered in a doubtful case. *Id.* (quotation and citation omitted). Our Supreme Court recently reaffirmed the importance of character evidence, holding that, when evidence of good character has been presented, the trial court must instruct the jury that "character evidence may, in and of itself, (by itself or alone) create a reasonable doubt of guilt and, thus, require a verdict of not guilty." *Commonwealth v. Neely,* 522 Pa. 236, ——, 561 A.2d 1, 3 (1989). *See also Commonwealth v. Tenbroeck,* 265 Pa. 251, 108 A. 635 (1919); *Commonwealth v. Luther, supra.*

The primary issue for the jury in this case was whether there had been forcible rape or consensual sexual intercourse. The jury, therefore, had to decide between the complainant's credibility and appellant's. Evidence of appellant's good character was crucial because it was the only evidence that corroborated appellant's claim of innocence.

court repeatedly has stated that the focus is on the time the criminal episode was committed and not the time of conviction for separate component offenses. *See Commonwealth v. Taylor,* 362 Pa.Super. 408, 524 A.2d 942 (1987) (three criminal convictions part of single contiguous train of criminal events with no substantial break in criminal activity, thus making defendant's prior record score zero under sentencing guidelines), *appeal denied,* 516 Pa. 640, 533 A.2d 712 (1988); *Commonwealth v. Wolfe,* 349 Pa.Super. 415, 503 A.2d 435 (1986) (prior convictions must *precede* commission of principal offense to be included in prior record score calculations) (emphasis added), *allocatur granted,* 514 Pa. 617, 521 A.2d 932 (1986) *appeal dismissed,* 517 Pa. 406, 537 A.2d 1370 (1987); *but see Commonwealth v. Phillips,* 374 Pa.Super. 219, 542 A.2d 575 (1988).

"In a case ... where intent and credibility are decisive factors leading together acquittal or conviction, the accused's reputation is of paramount importance. Indeed, evidence of good character may, in spite of all evidence to the contrary, raise a reasonable doubt in the minds of the jury." *Commonwealth v. Shapiro,* 223 Pa.Super. 15, 19–20, 297 A.2d 161, 163 (1972).

*Commonwealth v. Luther, supra,* 317 Pa.Superior Ct. at 50, 463 A.2d at 1077. *See also* Pennsylvania Suggested Standard Criminal Jury Instructions § 3.06(3) (Evidence of good character may by itself raise a reasonable doubt of guilt and justify a verdict of not guilty); *See also Commonwealth v. Neely, supra.* Because appellant's credibility was a central issue in the trial, and because of the importance of character testimony in such a case, we cannot conclude that the trial court's error was harmless.[10]

For the foregoing reasons, we find that the trial court erred in ruling that the Commonwealth could impeach appellant's character witness with his robbery conviction arising out of the same incident, and thereby prevented appellant from presenting character evidence. Accordingly, we vacate the judgment of sentence and remand for a new trial.

Judgment of sentence vacated and case remanded for a new trial.

**10.** The Commonwealth argues that limited information concerning the robbery conviction could have been introduced, as long as there was no mention that it was the same incident. The Commonwealth suggests that such a procedure would minimize prejudice. We disagree. The impact on the appellant would have been no less prejudicial if the prosecutor had introduced the robbery conviction and not disclosed to the jury that the robbery conviction arose out of the same incident. The jury then would be free to infer from the evidence that appellant had engaged in violent criminal behavior on a prior unrelated occasion. Permitting such an inference would expose appellant to the risk of conviction because the jury believed he was predisposed to commit violent crimes.