**COMMONWEALTH of Pennsylvania,**
**Appellant,**

v.

**Luis TORRES, Appellee. (Two Cases).**

Superior Court of Pennsylvania.

Argued Sept. 22, 1999.

Filed Nov. 10, 1999.

William G. Young, Asst. Dist. Atty., Philadelphia, for Com., appellant.

Owen Larrabee, Asst. Public Defender, Philadelphia, for appellee.

Before SCHILLER, OLSZEWSKI and BECK, JJ.

OLSZEWSKI, J.:

¶ 1 The Commonwealth appeals the order of the court below dismissing the criminal charges against appellee. We reverse.

¶ 2 Appellee was arrested on September 28, 1997, after escaping from the Stone Bridge Group Home, where he was incarcerated on previous drug charges. He was charged with drug offenses and escape.

Appellee's preliminary hearings were scheduled for October 3, 1997, but he did not appear and the court issued a bench warrant. On October 23, 1997, the court lifted the bench warrant after discovering that appellee had been incarcerated at the State Correctional Institution at Graterford since September 29, 1997. The court continued appellee's preliminary hearing until November 19, 1997, but appellee was not brought down on that date because he had been transferred to the State Correctional Institution at Rockview. The court continued the hearing until December 23, 1997. On December 23, appellee was brought down and held on all charges. He was arraigned on January 13, 1998, and his trial was listed for April 27, 1998. Despite the court's writ ordering appellee to be brought down to Philadelphia, appellee was not brought down. Judge Peter F. Rogers informed the district attorney (hereinafter "D.A.") that the case had to be tried on the next listing or it would be discharged. Judge Rogers also told the D.A.'s office that it should talk to the Deputy Mayor of Philadelphia, Diane Granlund, if it wanted appellee brought down.

¶ 3 Due to prison overcrowding in Philadelphia, Deputy Mayor Granlund has initiated a "priority" system. Under this system, she ensures that space is available in city jail only if the D.A.'s office notifies her regarding the urgency in a case. In effect, she prioritizes the court's writ. If the district attorney does not give this notification and no beds are available, she cancels the writ. The D.A.'s office, however, has declined to use the priority system because it contends that the system is in direct conflict with the court's official writ system. Because the D.A. has continued to reject this system, Deputy Mayor Granlund has continued to cancel writs for a lack of beds.

¶ 4 On July 10, 1998, appellee's case was called again. Deputy Mayor Granlund canceled the writ for lack of beds, and appellee was not brought down. Judge

Anne E. Lazarus, who was handling Judge Rogers' cases, discharged appellee because of Judge Rogers' statement that the case had to be tried. This discharge occurred more than two months prior to the Pa. R.Crim.P. 1100 [hereinafter "Rule 1100"] rundate[1] of September 26, 1998. This appeal followed.

¶ 5 Appellant raises one issue for our review: whether the lower court erred in discharging appellee before the rundate under Rule 1100 had passed solely because the judge had marked the case "must be tried" and where the Commonwealth had exercised due diligence by requesting the issuance of a writ.

¶ 6 We review Rule 1100 claims only for abuse of discretion. *See Commonwealth v. Matis*, 551 Pa. 220, 710 A.2d 12, 15 (1998) (citing *Commonwealth v. Edwards*, 528 Pa. 103, 595 A.2d 52 (1991)). We are limited "to the evidence in the record along with the findings of the trial court." *Id.* (citing *Commonwealth v. Fuchs*, 372 Pa.Super. 499, 539 A.2d 1307 (1988)).

¶ 7 Rule 1100 requires that "Trial in a court case . . . shall commence no later than 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 1100(a)(3). After expiration of the 365 days and prior to trial, a defendant may apply to the court to have the charges dismissed. *See* Pa.R.Crim.P. 1100(g). Upon such a request, the trial court must hold a hearing to determine whether the Commonwealth exercised due diligence in bringing the case to trial. *See Commonwealth v. Malinowski*, 543 Pa. 350, 671 A.2d 674, 679 (1996).

¶ 8 In this case, Judge Lazarus dismissed the case because of the "coordinate jurisdiction" rule, which provides that "judges of coordinate jurisdiction in the same case should not overrule each other's

decisions." *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1331 (1995). The second judge is not bound, however, "where the prior holding was clearly erroneous and would create a manifest injustice if followed." *Id.* at 1332. Because the 365-day limit had not yet been reached, Judge Rogers must have relied on his discretionary authority to mark the case "must be tried." Thus, we must determine whether Judge Rogers abused his discretion in doing so.

¶ 9 We look to our Supreme Court's recent decision in *Commonwealth v. Shaffer*, 551 Pa. 622, 712 A.2d 749 (1998), for guidance. In *Shaffer*, the Court reversed the trial court's order dismissing criminal charges in an effort to sanction the prosecutor. *See id.* at 751. Before trial, the Commonwealth had requested a time extension under Rule 1100. *See id.* at 750. The trial court granted the extension, ordering the Commonwealth to try the defendant within sixty days. *See id.* at 751. The Commonwealth failed to do so because the prosecutor was on vacation. *See id.* The trial court dismissed the criminal charges against the defendant in order to sanction the prosecutor for ignoring a court order. *See id.* The issue before our Supreme Court was "whether in imposing the severe sanction of dismissal of charges . . . the trial court abused its discretion." *Id.* The Court held that the trial court had abused its discretion because the sanction was "excessive." *Id.* at 753. While the Court recognized the importance of the court's control over its courtroom, it concluded that dismissal "should only be used in instances of absolute necessity." *Id.* at 752. We do not consider this case to be one of "absolute necessity," and indeed feel that dismissal was "excessive." Further, we must remember society's interest in criminal justice. "Dismissal of criminal charges punishes not only the prosecutor . . . but also the public at large, since the

---

1. *Pa.R.Crim.P. 1100 requires that trial must commence within 365 days of the filing of the* complaint.

public has a reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the fullest extent of the law." *Id.* Thus, we hold that the trial court abused its discretion in dismissing the charges against appellee.

¶ 10 Even had the Rule 1100 run-date expired, however, the court below erred in dismissing the charges. We feel compelled to address Rule 1100, as the court below appeared to partially rely on the Commonwealth's lack of due diligence in dismissing the case. *See* trial court opinion, 9/11/98, at 2–3. Under Rule 1100, the Commonwealth must establish two factors to show that it has not violated the Rule: first, that the circumstances causing the postponement of trial were beyond the control of the Commonwealth; and second, that it exercised due diligence in bringing the defendant to trial. *See* Pa.R.Crim.P. 1100(g).

¶ 11 First, the circumstances causing the postponement in this case were beyond the control of the Commonwealth. In *Commonwealth v. Nellom*, we stated clearly that a delay resulting from a failure to bring down a defendant despite a writ was not attributable to the Commonwealth. *See Commonwealth v. Nellom*, 388 Pa.Super. 314, 565 A.2d 770, 773 (1989). Consequently, the delay was beyond the Commonwealth's control.

¶ 12 Second, the Commonwealth has demonstrated due diligence by utilizing the traditional writ system. Due diligence is a fact-specific concept that is determined on a case-by-case basis. *See Commonwealth v. Wentzel*, 434 Pa.Super. 76, 641 A.2d 1207, 1208–09 (1994). Due diligence " 'does not demand perfect vigilance and punctilious care, but rather a reasonable effort.' " *Commonwealth v. Fisher*, 545 Pa. 233, 681 A.2d 130, 136 (1996) (quoting *Commonwealth v. Polsky*, 493 Pa. 402, 426 A.2d 610, 613 (1981)). The Commonwealth arranged for a writ, and the court issued the writ. Deputy Mayor Granlund, however, refused to honor the writ, instead insisting that the Commonwealth abide by her priority system. We reject the notion that asking Deputy Mayor Granlund to honor a writ is necessary to demonstrate due diligence; due diligence is demonstrated by preparing a writ.

¶ 13 Writs are court orders, and Deputy Mayor Granlund's priority system, in effect, is a refusal to follow court orders. Due diligence cannot include aiding an official in ignoring court orders by demanding adherence to an arbitrary new system. The practical effect of the priority system is to render writs obsolete. Should the D.A.'s office utilize the priority system, we can only speculate as to what will suffice to bring down prisoners in the future. Once it does, such "priorities" will become mundane. We fear that prison officials will then need to adhere to some "superpriority" system to delineate them from normal priorities, and so on. We refuse to fault the Commonwealth for following the existing, official writ system. Deputy Mayor Granlund's priority system does not give rise to a new duty on the part of the Commonwealth; rather, it gives rise to a new duty on the part of the court to enforce its own writs. There is little doubt that the court can enforce its own writs, and it should do so. *See In re Investigating Grand Jury*, 495 Pa. 186, 433 A.2d 5, 6 (1981) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.") (citations omitted).

¶ 14 Neither can we ignore the dual purposes behind Rule 1100.

Rule 1100 "serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society." In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. The ad-

ministrative mandate of Rule 1100 certainly was not designed to insulate the criminally accused from good faith prosecution through no fault of the Commonwealth.

\* \* \*

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 1100 must be construed in a manner consistent with society's right to punish and deter crime.... Strained and illogical judicial construction adds nothing to our search for justice....

*Commonwealth v. Genovese*, 493 Pa. 65, 425 A.2d 367, 369–71 (1981) (citations omitted). Dismissing the case against appellee does not serve the ends of justice; it in fact surrenders control of the criminal justice system to a city official. While the current system is not meeting the interests of justice in Philadelphia, we are not convinced that the solution is Deputy Mayor Granlund's priority system, as it has no basis in law. We also do not believe that the solution is to dismiss cases when prisoners are not brought down because they are not deemed "priorities." We can only encourage city officials and the district attorney's office to find a solution. This problem necessitates a political compromise that this Court is unable to provide. The court below erred in dismissing the charges against appellee.

¶ 15 Order reversed. Jurisdiction relinquished.