J-S12001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RODNEY SIMMONS, | |
| Appellant | No. 431 EDA 2012 |

Appeal from the Judgment of Sentence January 20, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003890-2010

BEFORE:  BOWES, SHOGAN and FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 08, 2015**

Rodney Simmons appeals from the judgment of sentence of five and one-half to eleven years imprisonment that was imposed after he was convicted of simple assault, retaliation against a witness, and conspiracy. We affirm.

Appellant's convictions stem from the January 12, 2010 assault of Leon Fulton by Appellant and another man who never was identified.  The assault occurred after Mr. Fulton alerted police to the location of James Walker, who was wanted for a 2008 armed robbery and who was arrested after Mr. Fulton contacted police.

The trial court cogently set forth the Commonwealth's evidence produced in support of Appellant's convictions, and we adopt its factual recitation for purposes of this appeal:

---

* Former Justice specially assigned to the Superior Court.

Even though Leon Fulton did not live at Philadelphia's Westport public housing complex, he knew its inhabitants, and they knew him. Fulton visited the projects daily to see his fiancée, who lived there with her four small children. Also, Fulton would occasionally give "hack rides" to the residents—that is, he would drive them somewhere in exchange for money.

In the late afternoon hours of January 12, 2010, Fulton arrived at Westpark and took an elevator to his fiancée's eighteenth-floor apartment. In the elevator with him was a man named James Walker, who Fulton knew only as "Gump." Although Fulton recognized him from Westpark, he had seen Walker more recently on a television program that labeled him one of Philadelphia's most wanted criminals. Walker had managed to elude police for over a year since being identified as the perpetrator of a 2008 gunpoint robbery.

When the elevator reached the eighteenth floor, both Fulton and Walker exited. As Fulton entered his fiancée's apartment, he observed Walker enter an apartment unit directly across the hall. Fulton immediately called 911 to alert the authorities as to Walker's whereabouts. Police officers arrived shortly thereafter and apprehended Walker.

After the arrest, Fulton became worried. He knew that in the projects "if you are a snitch, then you have a problem." N.T. 10/17/11 at 104. These fears materialized when, shortly after the police left with Walker, Fulton heard banging on his fiancée's apartment door. Upon opening the door, Fulton was confronted by two unknown females who lived across the hall, Walker's girlfriend, and an unknown male. The three women yelled that they knew Fulton was a snitch and would soon get what he deserved. Fulton quickly closed the door and stayed inside.

After the confrontation, Fulton grew concerned that his car, which was familiar throughout the Westpark community, might be vandalized. He grabbed his keys and set out to check on the vehicle, but did not make it out of the building. When he reached the ground-floor lobby, Fulton was confronted by [Appellant], who he knew only as "Rod" or "Hot Rod," and the unknown male who Fulton first saw with the three women who threatened him outside his fiancée's apartment.

As [Appellant] blocked the exit and stated that he knew Fulton was the snitch, the other male stood behind Fulton to prevent him from escaping through the entrance door. The two men then began throwing punches. Fulton fell to the ground and lost consciousness after [Appellant] struck him in the head with a blunt object.

When he regained consciousness, Fulton was still on the lobby floor, covered in blood, and his assailants were gone. He briefly searched for the car keys that were now missing from his pocket before walking to a nearby hospital to receive treatment for lacerations to his lip and forehead. Police officers arrived soon after, and although Fulton was reluctant to talk for fear of further retaliation, he eventually told the officers what happened. Fulton also told police that Tyrell Washington, the Westpark security guard, had likely witnessed the assault from his booth inside the lobby. Later that night, police took a signed statement from Washington that corroborated Fulton's story.

Later, both Fulton and Washington picked [Appellant's] picture out of a photo array, identifying him as one of the two assailants. Based on the identifications, detectives secured a warrant for [Appellant's] arrest. When police finally caught [Appellant] on February 9, 2010, he was in the same Westpark apartment where they had arrested Walker several weeks earlier.

Trial Court Opinion, 5//20/2013, at 1-3.

Based on this proof, Appellant was convicted by a jury of simple assault, retaliation against a witness, and conspiracy to commit simple assault. He was acquitted of aggravated assault, robbery, intimidation of a witness, and conspiracy to commit robbery. This appeal followed imposition of the described sentence. Appellant presents these issues for our review:

I. Whether the verdict was contrary to law as based on insufficient evidence.

- 3 -

II. Whether Appellant's sentence was unduly harsh and unreasonable.

III. Whether the court erred in denying Appellant's motion to dismiss under Rule 600 (G).

Appellant's brief at 8.

Appellant's first contention relates solely to his conviction for conspiracy. Specifically, he argues that there was insufficient evidence of an agreement between him and the second perpetrator of the assault. Appellant's brief at 17 ("[T]he evidence presented at trial was insufficient to prove that Appellant entered into an agreement with the unknown male to engage in the crime of assault. There was no testimony of an agreement between the individuals to assault Leon Fulton.").

Initially, we outline our standard of reviewing the sufficiency of the evidence.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier

of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Vargas***, 2014 WL 7447678, 7 (Pa.Super. 2014) (citation omitted).

The crime of conspiracy is outlined in 18 Pa.C.S. § 903(a):

A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

Thus, to establish the existence of a conspiracy, the Commonwealth must demonstrate that "1) the defendant entered into an agreement with another to commit or aid in the commission of a crime; 2) he shared the criminal intent with that other person; and 3) an overt act was committed in furtherance of the conspiracy." ***Commonwealth v. Nypaver***, 69 A.3d 708, 715 (Pa.Super. 2013) (citation omitted). As noted, Appellant challenges the proof regarding the first element. It is a well-ensconced principle that, "The Commonwealth does not have to prove that there was an express agreement to perform the criminal act; rather, a shared understanding that the crime would be committed is sufficient." ***Id.*** We employ four factors in

determining whether there was a shared understanding between the defendant and another actor: "(1) an association between alleged conspirators; (2) [the defendant's] knowledge of the commission of the crime; (3) [the defendant's] presence at the scene of the crime; and (4) in some situations, [the defendant's] participation in the object of the conspiracy." *Id*. (citation omitted).

In this case, all four factors are present. Appellant's anonymous cohort threatened the victim while Mr. Fulton was in his fiancée's apartment. Immediately thereafter, that man arrived with Appellant to assault Mr. Fulton as the victim was fleeing. The fact that the unidentified male and Appellant were associates was supported by this conduct, which indicated that the unnamed perpetrator went and retrieved Appellant in order to aid him in consummating his threatened retribution against Mr. Fulton for contacting police about Walker.

In addition, Appellant had knowledge of the crime and was present at its commission. Finally, he participated in the object of the conspiracy by repeatedly striking Mr. Fulton in concert with his cohort. We therefore reject Appellant's challenge to the sufficiency of the evidence supporting the existence of an agreement between him and the unidentified man to assault the victim.

Appellant next complains about the length of his sentence. Appellant filed a timely motion for reconsideration of his sentence, and his sentencing

claim was contained in a supplemental Pa.R.A.P. 1925(b) statement, which we granted Appellant permission to file. Hence, the issue is preserved for purposes of appeal.

A defendant does not have an absolute right to pursue a challenge to the discretionary aspects of his sentence. *Commonwealth v. Raven*, 97 A.3d 1244, 1252 (Pa.Super. 2014). To obtain merits review of such a claim, an appellant must include a Pa.R.A.P. 2119(f) statement in his brief. *Id*.; Pa.R.A.P. 2119(b) ("An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence."). Additionally, the Pa.R.A.P. 2119(f) statement must demonstrate "that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. 42 Pa.C.S. § 9781(b)." *Raven*, *supra* at 1252 (citation and quotation marks omitted). A substantial question warranting appellate review of a sentence is raised if the defendant avers that "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Id*.

Appellant's brief contains the necessary statement, and he argues therein that his sentence for retaliation against a witness was above the applicable guideline ranges and not justified as well as that the trial court considered an impermissible sentencing factor. Appellant's brief at 13-14.

Both contentions, contrary to the Commonwealth's position, raise the existence of a substantial question. *Commonwealth v. Bowen*, 55 A.3d 1254, 1263-64 (Pa.Super. 2012) ("In every case where a sentencing court imposes a sentence outside of the sentencing guidelines, the court must provide in open court a contemporaneous statement of reasons in support of its sentence. 42 Pa.C.S.A. § 9721."); *Commonwealth v. Allen*, 24 A.3d 1058, 1064-65 (Pa.Super. 2011) ("This Court has recognized that a claim that a sentence is excessive because the trial court relied on an impermissible factor raises a substantial question.").

We therefore will consider the merits of Appellant's challenge to his sentence. Our standard of review is established: "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Bowen*, *supra* at 1263. An abuse of discretion occurs only if "the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Id*. (citation omitted).

Appellant's position is that his sentence "was unduly harsh and unreasonable because the lower court relied on impermissible factors in sentencing Appellant above the recommended range." Appellant's brief at 18. This contention relates solely to the sentence imposed on the conviction for retaliation against a witness since Appellant received standard-range sentences on the simple assault and conspiracy offenses.

- 8 -

The sentencing transcript reflects the following. Appellant had a significant juvenile record, having been arrested nearly every year between the ages of eleven and seventeen. He also had an adult conviction, which resulted in a prior score of five. In 1993, at the age of seventeen, Appellant "was found guilty of aggravated assault and weapons charges for shooting someone" in the face. N.T. Sentencing [Incorrectly Titled Preliminary Hearing], 1/20/12, at 7, 8. Appellant received a sentence of ten to forty years for those crimes, and he was on parole when he committed this assault.

The Commonwealth also noted that, during the attack, Appellant's unidentified co-conspirator told Mr. Fulton that he would have been shot had that individual had his gun with him. *Id*. Appellant aided an associate of Walker in a revenge attack against a man for reporting Walker to police. Thus, Appellant was consorting with an armed robber and someone who would have shot a citizen for cooperating with police. The district attorney also told the sentencing court that Mr. Fulton was "relocated because of this incident," and Mr. Fulton and his family were removed from the projects where the assault occurred and placed in a home in a different city. *Id*. at 10, 11. At sentencing, Appellant raised no objection to this factual assertion by the Commonwealth.

Appellant also exercised his right of allocution. In lieu of a display of remorse, Appellant insisted that he merely had engaged in a fight and that

he was not retaliating against Mr. Fulton. *Id*. He then claimed that he had no association with the unnamed assailant, that Mr. Fulton involved Appellant in the situation by insisting that Appellant tell the unidentified attacker that Mr. Fulton was not a snitch, and that Appellant became involved in the altercation only after Mr. Fulton punched Appellant first. *Id*. at 12-13.

The court elected to sentence in excess of the guidelines on the retaliation offense, which had a standard range of 27-33 months plus or minus nine months for aggravated/mitigated ranges. It sentenced Appellant to three and one-half to seven years on that crime. The court justified its sentence based upon Appellant's lack of remorse, the viciousness of the attack, and the fact that the victim had to leave the area after the crime to avoid the possibility of further recrimination for his cooperation with police. *Id*. at 17.

In assailing the sentence, Appellant maintains that the sentence above the aggravated range "was inappropriate" in that the "victim's relocation was not a direct result of the offense." Appellant's brief at 20. Appellant also argues that "the incident was an ordinary retaliation and not an aggravated retaliation as the sentencing court stated." *Id*. Finally, he characterizes as impermissible the court's consideration of the fact that Mr. Fulton moved.

Initially, we note that "the sentencing guidelines are advisory in nature." *Bowen*, *supra* at 1264. A sentencing court may deviate from

them if "it offers reasons for this determination." *Id*. We must affirm a sentencing court's departure if the rationale outlined by the sentencing court indicate that its decision is not unreasonable. *Id*. In this case, the three outlined justifications fully supported the sentencing court's decision. Appellant unquestionably failed to display remorse and, instead, belligerently denied any culpability and blamed the victim. Second, we agree with the court's characterization of the retaliation as vicious. Mr. Fulton was rendered unconscious and hospitalized due to the assault, and Appellant's co-conspirator told the victim that he would have been dead if the co-conspirator had been in possession of his gun.

Finally, we disagree with Appellant's claim that Mr. Fulton's relocation was not the result of this incident as well as Appellant's suggestion that the trial court's consideration of this fact was improper. Appellant raised no objection when the Commonwealth reported at sentencing that Mr. Fulton fled due to this assault and fear of further retaliation. The fact that Mr. Fulton had to relocate due to this attack is thus supported by the record. Furthermore, the impact of the crime on a victim is decidedly a proper consideration in the sentencing setting. 42 Pa.C.S. § 9721(b) (emphasis added) ("In selecting from the alternatives [available to it, the sentencing court] shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense **as it relates to the impact on the life of the victim**

and on the community, and the rehabilitative needs of the defendant."). Thus, it was not impermissible for the sentencing court to justify its sentence based upon the fact that Mr. Fulton and his family had to flee their home for another location due to this assault. We reject Appellant's position that his three and one-half to seven year sentence on the retaliation charge was harsh, unreasonable, and an unjustified departure from the guidelines' recommendation.

Appellant's final averment is that his Rule 600 rights were violated. We assess this issue under the following principles:

> In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

> The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.

*Commonwealth v. Armstrong*, 74 A.3d 228, 234 (Pa.Super. 2013), *aff'd on other grounds*, 2014 WL 7404544 (Pa. 2014).

Initially, we note that Rule 600 was amended in 2012, after Appellant was tried and convicted; however, those amendments did not alter the substantive aspects of Rule 600 and merely re-ordered the rule and

incorporated aspects of its interpretation from case authority. Pa.R.Crim.P. 600, Comments ("In 2012, former Rule 600 was rescinded and new rule 600 adopted to reorganize and clarify the provisions of the rule in view of the long line of cases that have construed the rule").

Appellant's position on appeal is not a model of clarity. He does not set forth when the Rule 600 run date commenced and when it expired. He merely asserts that the Commonwealth did not display reasonable efforts to bring him to trial on two occasions: January 19, 2011, and June 16, 2011. Appellant's brief at 23. As we delineated in *Commonwealth v. Colon*, 87 A.3d 352, 358 (Pa.Super. 2014) (citation omitted).

> To determine whether dismissal is required under Rule 600, a court must first calculate the "mechanical run date," which is 365 days after the complaint was filed. . . . Case law also provides that a court must account for any 'excludable time' and 'excusable delay.' Excludable time is delay that is attributable to the defendant or his counsel. Excusable delay is delay that occurs as a result of circumstances beyond the Commonwealth's control and despite its due diligence. The only occasion requiring dismissal is when the Commonwealth fails to commence trial within 365 days of the filing of the written complaint, taking into account all excludable time and excusable delay.

Thus, the Commonwealth's failure to try a defendant within 365 days from the filing of the complaint does constitute a technical violation of Rule 600. *Id*. Nevertheless, if the trial court concludes that "the Commonwealth exercised due diligence and the delay was beyond the Commonwealth's control, the motion to dismiss shall be denied." *Id*. at 359 (citing former

Pa.R.Crim.P. 600(G)); *see* Pa.R.Crim.P. 600(C)(1) (For purposes of determining whether trial commenced within the time constraints of Rule 600, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.").

Since the Commonwealth is unable to control a trial court's calendar, judicial delay is generally considered excusable delay. ***Commonwealth v. Preston***, 904 A.2d 1, 14 (Pa.Super. 2006) (*en banc*) (citation and quotation marks omitted) ("Judicial delay may justify postponing trial beyond the adjusted run date if the Commonwealth was prepared to commence trial prior to the expiration of the mandatory period but the court was unavailable because of scheduling difficulties and the like."); ***Commonwealth v. Trippett***, 932 A.2d 188, 198 (Pa.Super. 2007) (citation and quotation marks omitted) ("It is well-settled that the Commonwealth cannot control the schedule of the trial courts and that therefore judicial delay can support the grant of an extension of the Rule 600 rundate.").

The record in this case establishes that the criminal complaint was filed on January 14, 2010, and Appellant's trial commenced on October 13, 2011, a lapse of 637 days. The trial court herein rendered the following findings with respect to the origin of this delay. On June 2, 2010, which was

within the Rule 600 run date, "the parties appeared at a scheduling conference before Judge Rosalyn K. Robinson. There, the case was listed for trial on January 19, 2011, the earliest possible date consistent with the court's calendar." Trial Court Opinion, 5/20/13, at 5-6. Appellant does not challenge this factual finding.

As the present matter was scheduled on June 2, 2010, for the earliest possible date on the trial court's calendar, January 19, 2011, the time between June 2, 2010 and January 19, 2011 is not chargeable to the Commonwealth under Rule 600. **Armstrong**, **supra** at 237 (where trial is listed by trial judge for earliest possible trial date on court's calendar, delay between when case was listed and when trial occurred was excusable delay); **Commonwealth v. Jones**, 886 A.2d 689, 702 (Pa.Super. 2005) (the date between when the trial is scheduled and when the trial occurred is excusable delay if trial court indicates, when scheduling trial, that trial was set for earliest possible date on trial court's calendar); **Commonwealth v. Nellom**, 565 A.2d 770, 773 (Pa.Super. 1989) ("Because the case was scheduled for the earliest possible date consistent with the court's business, this time is not chargeable to the Commonwealth" under former Rule 1100, which was supplanted by Rule 600 when the rules of criminal procedure were renumbered).

The trial court herein then noted that in November 2010, the criminal trial division in the judicial district that comprises Philadelphia County "was

geographically reorganized into zones based the different detective divisions of the Philadelphia Police Department." Trial Court Opinion, 5/20/13, at 6. Due to the reorganization, Appellant's case was re-assigned to the trial judge, the Honorable Ramy I. Djerassi, who presided at his trial. Then, the "parties appeared before [Judge Djerassi] for the first time on January 19, 2011, [which was the trial listing set by Judge Robinson] for a second scheduling conference because [Judge Djerassi] was in the middle of a different trial at the time. At the scheduling conference, the case was again listed for the earliest possible trial date, which was October 13, 2011." *Id*. Appellant also does not challenge this finding by the trial court. Thus, the delay between January 19, 2011, and October 13, 2011 is excusable under the above-cited case authority.

We observe that the trial court does not mention that on January 19, 2011, it listed the case for trial on June 16, 2011, as Appellant indicates on page twenty-three of his brief. The Commonwealth characterizes the June 16, 2011 event as a pretrial conference, the trial court does not mention June 16, 2011 as a trial listing, and Appellant failed to obtain a transcription of the Rule 600 proceeding. Thus, there is no record basis upon which to find that Appellant's second trial listing was June 16, 2011. His second trial listing was October 13, 2011, the first available on Judge Djerassi's calendar and trial commenced that day.

During the trial court proceeding, Appellant maintained that the period of delay caused by the rezoning should be attributable to the Commonwealth since the reorganization was initiated by the Philadelphia District Attorney's Office. *Id*. The trial court rejected that position because the rezoning of the court "was implemented for efficiency purposes, and was just one facet of the Pennsylvania Supreme Court's 2010 Reform Initiative." *Id*. The trial court thus characterized the delay occasioned by the rezoning as beyond the control of the Commonwealth and excusable. On appeal, Appellant challenges this ruling. He avers that "the trial court erred in ruling that the delay was partially caused by the rezoning initiative, which was deemed excusable delay. The Philadelphia District Attorney's Office was actively involved with this initiative, and the prosecutor in this case should have been aware of the potential Rule 600 issues that would result from it." Appellant's brief at 23-24.

We examined this issue in **Armstrong**, **supra**, where we ruled that, when a case is reassigned to a different judge due to the reorganization of the Philadelphia criminal court system by geographic zone and when the second judge scheduled trial for the earliest possible date on its calendar, all of that delay is excusable judicial delay. Hence, we must reject Appellant's position that the delay between his first trial listing and his second trial listing is not excusable. We do not find that the trial court abused its

discretion in denying Appellant's Rule 600 motion.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/2015