**COMMONWEALTH of Pennsylvania, Appellant**

v.

**David L. BRADFORD, Appellee.**

Superior Court of Pennsylvania.

Argued March 11, 2010.
Filed Aug. 4, 2010.

Michael W. Streily, Deputy District Attorney, Pittsburgh, for Commonwealth, appellant.

Matthew Debbis, Pittsburgh, for appellee.

BEFORE: BENDER, BOWES and COLVILLE *, JJ.

OPINION BY COLVILLE, J.:

The Commonwealth appeals the trial court's order dismissing the charges against David Bradford due to a violation of Pa.R.Crim.P. 600(A)(3).[1] We affirm the dismissal.

### Facts

The record reveals the following facts. On September 24, 2008, the Commonwealth filed a criminal complaint against Bradford. On October 9, 2008, a preliminary hearing was held. An Assistant District Attorney ("A.D.A.") represented the Commonwealth at that hearing. At the conclusion thereof, the case was held for trial. The Commonwealth did not diary this case or keep any type of record in order to track it for purposes of Rule 600.

On October 9, 2009, 380 days after the complaint date, Bradford filed a motion under Pa.R.Crim.P. 600(G).[2] Therein, he asked the trial court to dismiss this case

---

\* Retired Senior Judge assigned to the Superior Court.

1. Pa.R.Crim.P. 600(A)(3) provides the following:

    Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.

2. In pertinent part, Pa.R.Crim.P. 600(G) reads as follows:

    For defendants on bail after the expiration of 365 days, at any time before trial, the defendant or the defendant's attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated. A copy of such motion shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon.

    If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain. If, on any successive listing of the case, the Commonwealth is not prepared to proceed to trial on the date fixed, the court shall determine whether the Commonwealth exercised due diligence in attempting to be prepared

because more than 365 days had passed since the filing of the complaint and the Commonwealth had not yet brought him to trial. The trial court then convened a hearing on Bradford's request. At that hearing, the Commonwealth made the claim that it did not know this case existed until Bradford filed his aforesaid motion. When reminded by the trial court that an A.D.A. had been present at the preliminary hearing, the Commonwealth's response was that the A.D.A. routinely handled multiple cases at more than one district justice on a weekly basis. The Commonwealth then argued it does not begin monitoring cases for purposes of timely prosecution until the district justice presiding over the preliminary hearing forwards the relevant case paperwork to the Allegheny County Department of Court Records and the Department, in turn, transmits certain paperwork and/or an electronic notice to the District Attorney's Office. Upon receipt of the paperwork and/or notice from the Department, the Commonwealth then begins tracking its cases. Thus, the Commonwealth asserted that its system for complying with Rule 600 is to rely on district justices and the Department of Court Records to transmit information timely and, after the district justices and the Department transmit the information, to start monitoring prosecutions for purposes of Rule 600.

The Commonwealth further asserted it did not receive any paperwork or other notice in this case and was therefore not to blame for the failure to bring Bradford to trial.[3] Part of the Commonwealth's argument was the proposition that its decision to rely on the district justice and the Department of Court Records for the proper, timely transmittal of paperwork/notice constituted sufficient due diligence by the Commonwealth so as to satisfy its Rule 600 duty.

Also during the aforesaid hearing, the Commonwealth contended Bradford had some type of obligation to complain at an earlier date about the stagnancy of the prosecution against him. The Commonwealth's position was that, had Bradford complained at an earlier date, the Commonwealth would have known about this case and would have been able to prosecute Bradford in a timely manner.

After the hearing on Bradford's motion, the trial court took the matter under advisement and, later, issued findings of fact and an order granting the motion to dismiss. Essentially, the court's findings and order indicated that more than 365 days from the filing of the complaint had elapsed and were attributable to the Commonwealth, that the Commonwealth had not exercised due diligence in attempting to bring Bradford to trial and that the circumstances occasioning the failure to bring Bradford to trial were not beyond the Commonwealth's control.

The Commonwealth then filed this timely appeal. Herein, the Commonwealth argues it acted with due diligence under Rule 600 by relying on the district justice and/or the Department of Court Records to transmit the appropriate information to the District Attorney's Office and, therefore, the Commonwealth's failure to bring

to proceed to trial. If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant.

3. The district justice's docket transcript of this case was printed on April 20, 2009. It appears the trial court accepted the printing date as evidence that the docket transcript and/or other relevant paperwork was mailed on that date by the district justice to the Allegheny County Department of Court Records. The Department of Court Records denied having received any such paperwork.

Bradford to trial within 365 days of the complaint should be excused. Additionally, the Commonwealth suggests Bradford is accountable for some or all of the elapsed time because he did not, at some earlier date, notify the trial court or the Commonwealth that the Commonwealth was not proceeding with the prosecution against him.

### Legal Principles

Rule 600 provides, *inter alia,* that a defendant on bail is entitled to have trial commence no later than 365 days after the complaint date. Pa.R.Crim.P. 600(A)(3). When computing the number of pretrial days attributable to the Commonwealth under this rule, certain delays are excluded, such as those occasioned by defense postponements, by express defense waivers of Rule 600, by the unavailability of the defendant or defense counsel, and/or by the fact that the defendant could not be located and apprehended. Pa.R.Crim.P. 600(C).

█ At any time before trial, a defendant may move for dismissal of the case if Rule 600 has been violated. Pa.R.Crim.P. 600(G). However, even when the defendant has not been tried within the aforesaid 365 days, and even when those days appear to be attributable to the Commonwealth, a Rule 600 motion shall nevertheless be denied if the Commonwealth proves that it acted with due diligence in attempting to try the defendant timely and that the circumstances occasioning the delay were beyond the Commonwealth's control. *Commonwealth v. Frye,* 909 A.2d 853, 858 (Pa.Super.2006); Pa.R.Crim.P. 600(G). Thus, if the Commonwealth establishes it acted with due diligence and shows the delay in question was beyond the Commonwealth's control, the delay is excusable. *Frye,* 909 A.2d at 858.

█ Due diligence is a fact-specific concept to be determined on a case-by-case basis. *Commonwealth v. Ramos,* 936 A.2d 1097, 1102 (Pa.Super.2007). While due diligence does not demand perfection, it does require the Commonwealth to put forth a reasonable effort. *Id.* For example, due diligence requires the Commonwealth to employ a record-keeping system to keep track of its cases so that they are prosecuted within the time requirements of the law. *Commonwealth v. Browne,* 526 Pa. 83, 584 A.2d 902, 906 (1990). The failure to employ a diary or other record-keeping system shows a lack of due diligence. *Id.*

█ Additionally, the Commonwealth's duty to be diligent exists throughout all stages of a case. *Commonwealth v. Hawk,* 528 Pa. 329, 597 A.2d 1141, 1145 (1991). Thus, the Commonwealth cannot "carelessly linger in the early stages" of a prosecution. *Commonwealth v. Kearse,* 890 A.2d 388, 393 (Pa.Super.2005). Indeed, Rule 600 makes plain that the time period for bringing a case to trial begins to run on the day the complaint is filed, not at some later point in the prosecution. Pa.R.Crim.P. 600(A). Also, the duty to ensure that a case is timely tried rests with the Commonwealth, not with any other office or entity. *Kearse,* 890 A.2d at 392–93.

█ When this Court reviews a trial court's ruling under Rule 600, we are required to view the facts in the light most favorable to the party that prevailed on the Rule 600 motion. *Commonwealth v. Williams,* 876 A.2d 1018, 1020 (Pa.Super.2005). Moreover, we must review the trial court's order under an abuse-of-discretion standard. *Id.* An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or

misapplication of law. *Commonwealth v. Hacker,* 959 A.2d 380, 392 (Pa.Super.2008).

### Analysis

■ There is no dispute in this case concerning the amount of time that passed after the filing of the complaint. The Commonwealth acknowledges Bradford was not tried within 365 days of the complaint date. Also, none of the elapsed time is excludable under Pa.R.Crim.P. 600(C). In this vein, we note this case does not involve any defense postponements, defense waivers of Rule 600, periods wherein the defense was unavailable, or periods wherein Bradford could not be located and apprehended.

Nevertheless, the Commonwealth's brief implies Bradford should somehow be accountable for some of the delay. More specifically, the Commonwealth comments no fewer than four times in its brief that Bradford failed to alert the trial court or anyone else about the delay in his case. Thus, although the Commonwealth also states that Bradford had no duty to ensure he was brought to trial in a speedy fashion, the Commonwealth nevertheless suggests Bradford should somehow be responsible for some or all of the elapsed time. This suggestion is wrong. The duty to adhere to Rule 600 rested with the Commonwealth, not Bradford. Bradford did not have an obligation to tell the Commonwealth that the Commonwealth was not proceeding with its case against him. As such, to whatever extent the Commonwealth may be contending some or all of the delay in this case is excludable because Bradford did not complain earlier about the dormancy of the prosecution, that contention is frivolous.

Accordingly, all the time in question appears to be attributable to the Commonwealth. We must therefore consider whether any of that time is excusable. We recall the Commonwealth kept no record of this matter in order to track it for purposes of Rule 600. Indeed, after filing the complaint and appearing at the preliminary hearing, the Commonwealth took no action whatsoever until Bradford sought dismissal of the charges. The Commonwealth, though, argues some or all of the elapsed time is excusable because the Commonwealth could not control the district justice's office or the Department of Court Records so as to ensure the proper case information was transmitted at the appropriate time in order that the Commonwealth could then begin to monitor the case for purposes of Rule 600. This argument, of course, actually works against the Commonwealth because the argument demonstrates the obvious hazard in the Commonwealth's deliberate reliance on offices not within its control: the Commonwealth knew it could not control those offices and yet the Commonwealth chose to rely on them. That is, knowing it could not control when the district justice would forward the case information to the Department of Court Records, knowing it could not control when the information would be received by the Department, and knowing it could not control when the Department of Records would then transmit case information to the Commonwealth, the Commonwealth nonetheless decided not to keep its own records but, instead, to utilize a system wherein the Commonwealth rendered its compliance with Rule 600 dependent on the district justice, on the Department of Court Records, on the transmission of information between those offices, and on the transmission of information between the Department and the Commonwealth. This approach by the Commonwealth was not reasonable.

In support of its position, the Commonwealth points out that the district justice was required by Pa.R.Crim.P. 547 to sub-

mit certain case information to the Department of Court Records within five days of the preliminary hearing. The Commonwealth then argues that, because the district justice failed to do so, the Commonwealth must be excused from its Rule 600 duty. This argument is specious. Rule 600 does not condition the Commonwealth's obligation on what other offices do. Rather, Rule 600 jurisprudence is clear that, to be diligent, the Commonwealth needs to track its own cases.

We stress that compliance with Rule 600 was not at all beyond the Commonwealth's control in this case. The Commonwealth could have kept a list, used a diary, maintained a docket, or employed some other record-keeping system to track this case, but the Commonwealth elected not to do so. That is, the A.D.A. walked out of the preliminary hearing without any record of this case for Rule 600 purposes, and the District Attorney's Office assumed the district justice and Department of Court Records would remind the District Attorney's Office about this case at some later time. Such conduct is inappropriate. The Commonwealth cannot choose to rely on offices it does not control and then, when Rule 600 time limits expire, assert a lack of control over those offices as an excuse for noncompliance with the rule. In short, the Commonwealth must not outsource any aspect of its obligation to bring cases to trial in a timely fashion.

■ The Commonwealth also argues that, in Allegheny County, there are dozens of district justices and some 20,000 cases that pass annually from the district justices to the Court of Common Pleas. Given this volume of cases, the Commonwealth argues, it is reasonable for the Commonwealth to rely on the district justices and/or the Department of Court records to forward appropriate paperwork and to do so timely. First, we note at least some of the statistics on which the Commonwealth relies in its brief are not in the record. This Court must not rely on facts *dehors* the record. *Commonwealth v. Wrecks*, 931 A.2d 717, 722 (Pa.Super.2007). In any event, however, the Commonwealth's argument again works against itself because the existence of a high number of cases would only highlight the risk the Commonwealth takes by not keeping track of so many prosecutions: knowing it has so many cases to prosecute, the Commonwealth consciously lets the timely prosecution of all those cases depend on the conduct of outside offices—offices not charged with a Rule 600 duty as is the Commonwealth.

We realize that, because Bradford was accused of sex crimes, some members of the public may react emotionally, believing there should be some device to ensure he is prosecuted even if the law must be overlooked or manipulated to reach that end. However, this Court cannot ignore a lack of due diligence in order to facilitate a prosecution. The outcome of this case must be guided by the rule rather than by the nature of the underlying accusations. Rule 600 is not a mere technicality.

The Commonwealth's Rule 600 duty to be diligent applies equally in every criminal case. In any event, if some find themselves focusing, for whatever reason, on the seriousness of the alleged offenses, the Commonwealth's lack of diligence should seem to such persons even more problematic when the case involves particularly egregious accusations. That is, despite knowing the seriousness of the alleged offenses, the Commonwealth did not act reasonably. It did not keep any list, any diary, any docket, any calendar, or any other record of any kind to ensure that the prosecution of its case proceeded on time.

■ We understand Rule 600 is not intended to insulate the criminally accused

from good faith prosecution delayed through no fault of the Commonwealth. *Commonwealth v. Jones,* 886 A.2d 689, 699 (Pa.Super.2005). However, this prosecution was delayed through the fault of the Commonwealth. Moreover, it is clear that the speedy-trial concerns of Rule 600 are not hypertechnical requirements to be emasculated by the acceptance of the Commonwealth's unreasonable excuses for failing to proceed in a timely manner. *Browne,* 584 A.2d at 905–06. Like all rules of procedure, Rule 600 is to be followed so that society is afforded an effective, orderly, predictable administration of justice and so that individual rights (*e.g.,* the right to a speedy trial) are protected. *Jones,* 886 A.2d at 699. While recognizing society's interest in the prosecution of criminal charges, this Court surely cannot rationalize the Commonwealth's conscious choice not to monitor its prosecutions. Doing so would not just ignore Bradford's rights but would also undermine society's interest in having a well-managed, rule-based and effective criminal justice system.[4] Indeed, rationalizing the Commonwealth's "system" of relying on and then blaming non-prosecutorial offices would encourage further dereliction and would likely foster violations of Rule 600 in future cases.

■ Along these lines, we recall the Supreme Court has condemned and/or otherwise expressed concern over the judicial tendency to accept excuses for the Commonwealth's failure to bring defendants to trial within the time limits of the rule. *Browne,* 584 A.2d at 905–06. Indeed, it is plain that this Court, and all courts, must not seek to condone or devise such excuses but must, instead, preserve the vitality of the rule. *See id.* The vitality of the rule cannot be preserved if courts rationalize the Commonwealth's failure to follow it.

There is another point which is critical. We recall this Court is not to disturb the trial court's ruling unless the trial court abused its discretion. In this case, the trial court conducted a hearing, took evidence and heard argument. The court then authored a lengthy opinion setting forth the relevant facts and procedural history of this matter, examining the relevant law, analyzing the parties' positions, and applying the law to the particulars of this case. In so doing, the court's analysis addressed many or all of the matters we have considered *supra.* The trial court's analysis of this case was thorough,

---

4. We observe with concern that, even after its failure to bring Bradford to a timely trial, the Commonwealth might still not fully appreciate that it alone has the duty under Rule 600. For example, in its brief, the Commonwealth talks of how it, the Department of Court Records and the Court Administrator are developing a system and have identified certain local rules that will need to be enacted to ensure a Rule 600 violation of the instant type does not again occur. The brief also speaks of funding that the Commonwealth, the Department and the Court Administrator are trying to secure to invest in personnel and equipment to assure compliance with Rule 600. These comments by the Commonwealth seem to suggest a continuing belief that there is some shared duty under Rule 600 or that the Commonwealth is right to depend on outside offices for its compliance with that rule. What the Commonwealth needs to understand is that it—not the Department of Court Records, not the Court Administrator, not district justices—needs to track the prosecution of criminal cases in order to comply with Rule 600. Another way to appreciate this duty is to recall the Pennsylvania Supreme Court's directive that, just as defense attorneys must keep track of their cases so as to comply with deadlines and other dates relevant thereto, "[n]o less is required of a properly administered district attorney's office." *Browne,* 584 A.2d at 906. Here, the Commonwealth did not keep track of its case and was not duly diligent.

thoughtful, supported by the record, and grounded in the law. Upon our review of the court's decision, we see there are no grounds to conclude the court's ruling was based on bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of the law. There being no abuse of discretion, we must not disturb the trial court's order dismissing this case.[5]

In its remaining issue, the Commonwealth complains the trial court released Bradford from custody after issuing its order dismissing this case but before notifying the Commonwealth of that order. The Commonwealth contends the trial court thereby denied the Commonwealth the right to an automatic stay during this appeal under Pa.R.A.P. 1736(b). Given our resolution of the Commonwealth's first issue, this latter claim is moot. Therefore, we will not address it.

Prior to leaving this matter, we wish to make a few comments regarding the Dissent. The Dissent relies largely on *Commonwealth v. Monosky*, 511 Pa. 148, 511 A.2d 1346 (1986), to excuse the delay in this case. In *Monosky*, the district attorney was not present at the preliminary hearing, the district attorney did not learn of the charges until the district justice forwarded the case papers, and the Supreme Court found the Commonwealth was not accountable for the delay occurring during the time while the district justice failed to transmit the papers. *Id.* at 1348. In the present matter, however, an A.D.A. was present at the preliminary hearing, the D.A.'s Office therefore did know about the case, and the D.A. failed to keep a record of this case. The D.A. cannot say that it did not know about the case until after the district justice forwarded the papers. Thus, *Monosky* is inapplicable.[6]

**5.** Before completing our discussion of Rule 600, however, there is an additional matter we wish to address for the sake of clarity. Bradford was incarcerated on this case when he filed his Rule 600 motion but, by their terms, Sections (A)(3) and (G) of Rule 600 appear to apply only to defendants at liberty on bail. As such, a claim might have arisen as to whether Bradford was even entitled to file a motion under Section (G). However, there are multiple reasons why this possible claim cannot lead to relief for the Commonwealth. First, the claim was not raised in the trial court and has not been presented to us. Additionally, at the time Bradford filed his motion for dismissal under Rule 600(G), he had already reached the point where he was entitled to be at liberty on bail—specifically, nominal bond under Rule 600(E)—had he made such a request. The Commonwealth concedes this point. Thus, it seems to be indisputable that, rather than filing a motion asking only for dismissal, Bradford could have filed a combined motion, asking first to be released on bail (*i.e.,* nominal bond due to his continued pretrial incarceration of more than 180 days) and then asking, in the same motion, for the immediate dismissal of his case due to the passage of more than 365 pretrial days. In this fashion, he could have

secured bail status, bringing himself squarely within the wording of Sections (A)(3) and (G) for the instant before his case was dismissed. As such, it is hard to argue there is some reversible error in the trial court's action of having proceeded directly to a dismissal of the charges rather than first granting momentary liberty on bail as a prerequisite to the dismissal that would occur in the next instant. Accordingly, although Bradford was not at liberty on bail before the trial court dismissed his case, any error by the trial court in granting dismissal without first releasing him on bail would be harmless.

Moreover, despite the words "at liberty on bail" in Section (A)(3) and the words "on bail" in Section (G), we have previously indicated the 365–day limit applies to at least some incarcerated defendants. *Jones,* 886 A.2d at 699 (indicating 365–day limit applies to incarcerated capital defendants who have no right to bail). Thus, it would seem the operative fact in Sections (A)(3) and (G) is whether 365 days have passed from the filing of the complaint, not whether the defendant is incarcerated or free on bail. In this case, more than 365 days of non-excusable days attributable to the Commonwealth passed after the complaint was filed.

In fact, the Dissent itself acknowledges that the Supreme Court limited *Monosky* to its facts (*i.e.,* facts where the district attorney was not present at the preliminary hearing and did not know about the case until after the judicial delay). *Id.* at 1348. Indeed, the Supreme Court explicitly stated, "We do **not** now consider whether ... judicial delay, which occurs *after* the district attorney is aware of the charges ... may justify an extension" of the Rule 600 time limits. *Id.* (bold emphasis added). Such is the present case: the district justice failed to transmit papers, but that failure occurred after the D.A. knew of the charges. Accordingly, the *Monosky* court decided a case with facts critically different than the present one and, pursuant to the Supreme Court's own explicit remarks, *Monosky* does not control the instant matter.[7]

Next, we note the Dissent seems to think we are requiring the Commonwealth to use a perfect system. Dissent at 645. We are not. What we are saying is that the D.A.'s Office should keep a list of its cases, just as all practicing lawyers and law firms know to do. Thus, we are only holding the Commonwealth to the same standard as we would all attorneys—*i.e.,* not to miss deadlines such as statutes of limitations or, in this case, Rule 600.

Further, the Dissent speaks of the "prosecution of a person identified by his victim as a kidnapper and rapist." *Id.* at 649. There has been no trial in this case. We do not know if the accuser in this case is a victim. If she is a victim, we certainly do not know if she is "his" (*i.e.,* Bradford's) victim. Bradford is presumed to be innocent. In any event, the question before us is about Rule 600, not the underlying accusations.

Moreover, the Dissent discusses what seem to be parts of Bradford's criminal history. His criminal history should have no bearing on Rule 600 considerations. Once again, the question is about Rule 600. In this case, the Commonwealth simply did not comply with Rule 600, and we cannot overlook this violation merely because Bradford has some criminal history.

Despite the Dissent's assertions to the contrary, both the trial court and this Majority were cognizant of the serious crimes with which Bradford was charged. However, both this Majority and the trial court also considered the protection of the speedy trial rights of the year-long-incar-

---

6. Notably, the Dissent fails to articulate how the A.D.A.'s presence at the preliminary hearing in the instant case affects the Rule 600 calculation, or precisely what time should be attributable to "judicial delay."

7. While we believe *Monosky* is easily distinguishable from this case, we also question the viability of *Monosky* after *Browne*. For example, while we need not make the following observation to resolve the instant matter, there is an interesting point that comes to mind: the police, who file criminal complaints, are part of the Commonwealth just as much as a D.A.'s Office is. Because the police are part of the Commonwealth, it would seem illogical to say that the Commonwealth does not know of a case until the D.A.'s Office learns of it. Phrased differently, the Com- monwealth files the complaint and the Commonwealth surely knows of its own complaint when it files its own complaint. Rule 600 time limits run from the filing of the complaint and the terms of the rule do not state that the time is tolled until the police advise the local D.A.'s Office of the complaint. Accordingly, if police and district attorneys do not employ some system of communication so as to advise each other of cases and to prosecute them timely, the fault would logically seem to be the Commonwealth's. Such a result would be consistent with *Browne* in that *Browne* requires the Commonwealth, to employ systems to keep track of cases. In any event, the D.A.'s Office in the present case did know of this case shortly after the complaint was filed.

cerated presumed-innocent Bradford in our analyses. In addition, as noted above, we considered society's interest in an effective, orderly, predictable administration of justice. There is no caselaw cited in the Dissent which holds that a Rule 600 analysis is affected in any way by the charges at issue.

Additionally, we note the Dissent claims that the "system" employed by the D.A.'s Office to keep track of cases "has worked until the particular instance." Dissent at 645. The record does not show that the instant failure was the first. The Dissent is impermissibly relying on facts not in the record.

The Dissent credits the Commonwealth for a variety of efforts the D.A.'s Office took in order to advance the case after learning that the time period under Rule 600 had passed. We do not doubt the D.A.'s Office felt a sense of urgency after Bradford filed his motion. However, attempting to advance the case after the expiration of the time for doing so did not constitute due diligence as required by Rule 600. The rule requires due diligence before the time limit expires.

The Dissent also claims the trial court was "quick to punish the prosecutor and to vindicate the speedy trial rights of the accused." Dissent at 648. We do not believe that the trial court acted to punish the prosecutor or that the court was in any sense hasty. Rather, the court acted in a thoughtful manner to comply with the Supreme Court's rules, specifically Rule 600. After Bradford's motion was filed, the Commonwealth filed a detailed response along with affidavits from the Department of Court Records and the D.A.'s Office about the monitoring or lack of monitoring in this case. The court then conducted a hearing. At the end thereof, the court did not issue an immediate ruling but, rather, took the matter under advisement.

Roughly one week later, after having considered Bradford's request, the Commonwealth's response, the affidavits, and the arguments made at the aforesaid hearing, the court issued its ruling in an order containing twelve paragraphs and several subparagraphs of findings of fact and legal conclusions. The order was later supported by a thirty-five page trial court opinion that was detailed, careful and, most importantly, accurate in fact and law. The trial court thus proved itself to be deliberate, rational and guided correctly by law and fact.

Ultimately, the problem with the Dissent and the Commonwealth's position is this: the Commonwealth knew of this case, did not keep track of it, exercised no due diligence before the time limits of the rule expired, and failed to bring Bradford to trial within those limits. The record and the trial court's thoughtful opinion show that, in reaching its decision to grant Rule 600 relief, the trial court did not reach its conclusion as a result of bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of the law. Therefore, the court did not abuse its discretion. Because the trial court did not abuse its discretion, there is no basis for us to disturb the ruling in this case.

Based on our foregoing discussion, the Commonwealth is not entitled to relief and we affirm the trial court's order dismissing this case.

Order affirmed.

Judge BOWES files a Dissenting Opinion.

**DISSENTING OPINION BY BOWES, J.:**

I respectfully dissent from the majority's disposition of this case.

On September 24, 2008, Appellee, David L. Bradford, was charged with kidnapping,

rape, involuntary deviate sexual intercourse, and terroristic threats. The affidavit of probable cause indicated that at approximately 10:00 p.m. on September 21, 2008, the victim, E.F., was sitting on the front steps of an apartment building located at 500 Todd Street, Wilkinsburg, Pennsylvania, waiting for a friend. Appellee walked down the street and represented that he had keys to his apartment and would let her inside the building. E.F. accompanied Appellee to the front door of the structure, where Appellee suddenly placed a knife to her neck and ordered E.F. to accompany him and remain silent. E.F. indicated that she would comply with these demands in order to avoid harm.

Appellee took E.F. to the rear of the building where he told her, "I want sex and I want to be in control." Criminal Complaint, 9/24/08, at 2. E.F. promised not to inform police of Appellee's actions if he did not harm her. At that point, Appellee took E.F. to his apartment on Rebecca Avenue. Therein, Appellee performed oral sex on E.F., raped her, and forced her to perform oral sex on him. Nine hours later, E.F. escaped from the apartment after Appellee went to work. She subsequently identified Appellee from a photographic array, and Appellee's landlord confirmed that he lived in the apartment where the victim was assaulted.

Appellee was arrested on September 25, 2008; his preliminary hearing was held on October 9, 2008, before a Wilkinsburg Magisterial District Judge.[1] Both the Commonwealth and Appellee were represented by counsel at that hearing. The complaint was amended by the additional charges of sexual assault, aggravated inde-

cent assault, and indecent assault as a result of the victim's testimony. Appellee was bound over for trial and returned to the Allegheny County jail. For the next twelve months, no additional activity occurred relative to Appellee's case.

Exactly one year later, on October 9, 2009, Appellee moved to have the charges dismissed pursuant to Pa.R.Crim.P. 600 ("Rule 600") due to the Commonwealth's failure to try him within 365 days.[2] When the district attorney's office received Appellee's Rule 600 motion, that office realized that Appellee's case had not been correctly processed by the Magisterial District Judge's office. A prosecutor immediately contacted the Wilkinsburg Magisterial District Judge's office and requested that all the paperwork regarding Appellee's criminal matter be sent by facsimile to her office. When the paperwork was received on October 14, 2009, the prosecutor ensured that it was entered in the court's computer system as expeditiously as possible so that it would be assigned a number on the criminal docket. The criminal action number was electronically transmitted to the Office of the District Attorney of Allegheny County's CIMS computer docketing system. The following day, a criminal information was filed.

The prosecutor then personally contacted the arraignment office and requested that Appellee's case be listed immediately. The arraignment was set for October 23, 2009. The first available trial date was requested and received, and Appellee's trial was scheduled for December 7, 2009. Prior to trial, a hearing was held on Appellee's Rule 600 motion. On November 4,

---

**1.** Magisterial District Judge Kevin E. Cooper was sitting for Magisterial District Judge Kim M. Hoots.

**2.** This motion was filed at the miscellaneous docket since the criminal action had no as-

signed number because the preliminary hearing transcript, criminal complaint, and related documents had not been transmitted to the clerk of courts.

2009, Appellee's motion to dismiss was granted, and this Commonwealth appeal followed.

"In evaluating speedy trial issues, our standard of review is whether the trial court abused its discretion, and our scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party." *Commonwealth v. Wholaver,* 989 A.2d 883, 899 (Pa.2010). In determining whether a trial court properly exercised its discretion, we do not find abuse based on "merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Aikens,* 990 A.2d 1181, 1184–85 (Pa.Super.2010) (quoting *Commonwealth v. King,* 959 A.2d 405, 411 (Pa.Super.2008)).

Rule 600(A)(2) provides that trial in a court case where a complaint is filed against a defendant who is incarcerated must commence 180 days from the date on which the complaint was filed. Rule 600(A)(3) mandates that trial for a defendant at liberty on bail must begin within 365 days of the filing of the written criminal complaint. Under Rule 600(E), an imprisoned defendant is entitled to be tried within 180 days or released on nominal bail if his trial does not occur within 180 days. Appellee did not petition for nominal bail after he was eligible to do so. Thus, he was potentially entitled to be discharged under Rule 600 if he was not brought to trial within 365 days from when the complaint was filed. *See Commonwealth v.*

*Abdullah,* 539 Pa. 351, 652 A.2d 811 (1995).[3]

As evidenced by the above undisputed timeline, Appellee was not brought to trial within 365 days of the filing of the criminal complaint in this matter. Therefore, a *per se* Rule 600 violation occurred. However, relief does not automatically flow from a technical violation of this rule. Despite the existence of such a violation, Rule 600(G) provides, "If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss **shall be denied,** and the case shall be listed for trial on a date certain." (emphasis added). Thus, even in the face of a clear Rule 600 violation, if the Commonwealth nevertheless exercised due diligence and if the circumstances causing the delay were beyond the Commonwealth's control, a defendant is not entitled to be discharged under Rule 600. *Commonwealth v. Hill,* 558 Pa. 238, 736 A.2d 578 (1999); *Commonwealth v. Aaron,* 804 A.2d 39 (Pa.Super.2002) (*en banc*).

In the present case, the Commonwealth invokes Rule 600(G) and maintains that it properly exercised due diligence and that the circumstances occasioning the postponement were beyond its control. Appellant's brief at 5. Thus, an analysis of the application of Rule 600(G) mandates the conduct of two inquiries, did the Commonwealth exercise due diligence and was the delay beyond the control of the Commonwealth? I address those issues in reverse order and first analyze whether the delay

---

**3.** When *Abdullah* was decided, the concepts now contained in Rule 600 were encompassed in former Pa.R.Crim.P. 1100 ("Rule 1100"). *See Commonwealth v. Sloan,* 589 Pa. 15, 907 A.2d 460, 463 n. 5 (2006). Rule 1100 was renumbered Rule 600 on April 1, 2001.

*Id. Sloan* indicates that since the "substance of the sections of current Rule 600 and former Rule 1100 under scrutiny are identical," the case law interpreting the old section can be utilized for purposes of Rule 600.

at issue was beyond the Commonwealth's control.

## Was the Delay Beyond the Control of the Commonwealth?

The record herein establishes that Appellee was not tried within 365 days because the magisterial district judge's office failed to comport with its legal obligation to transmit the preliminary hearing transcript and other pertinent documents within five days of the preliminary hearing. Pa.R.Crim.P. 547 ("Rule 547") provides:

Rule 547. Return of Transcript and Original Papers

(A) When a defendant is held for court, the issuing authority shall prepare a transcript of the proceedings. The transcript shall contain all the information required by these rules to be recorded on the transcript. It shall be signed by the issuing authority, and have affixed to it the issuing authority's seal of office.

(B) The issuing authority shall transmit the transcript to the clerk of the proper court within 5 days after holding the defendant for court.

(C) In addition to this transcript the issuing authority shall also transmit the following items:

(1) The original complaint;

(2) The summons or the warrant of arrest and its return;

(3) All affidavits filed in .... the proceeding[.]

. . . .

Under directly applicable precedent, this delay cannot be considered the fault of the Commonwealth. In *Commonwealth v. Monosky*, 511 Pa. 148, 511 A.2d 1346 (1986),[4] the defendant's preliminary hearing was held without the presence of a district attorney. The transcript of that hearing, wherein the defendant was bound over for trial, was not filed with the clerk of courts until 165 days after the complaint had been filed. The district attorney promptly petitioned for an extension of time under Rule 600, and the issue presented to our Supreme Court was whether an "unexplained delay on the part of a district justice[5] may serve to preclude the Commonwealth from obtaining an extension of time pursuant to Rule [600]." *Id.* at 1347. The Court held that the "delay here at issue was **judicial delay,** occasioned by the failure of the district justice to comply with the requirement of [former] Pa.R.Crim.P. 146(b) [now contained in Rule number 547] that the transcript of the proceedings before the issuing authority be transmitted to the clerk of the court within five days after the defendant is held for court." *Id.* (emphasis added). Thus, *Monosky* specifically held that a delay in the case caused by the failure of a magisterial district judge to comply with Rule 547 constituted judicial delay.[6]

The Supreme Court next considered the issue of delay occasioned by the purported negligence of a district justice's office in *Commonwealth v. Browne*, 526 Pa. 83, 584 A.2d 902 (1990). In that case, the defendant's arraignment was not scheduled in a timely manner. The Commonwealth contended that the responsibility to schedule arraignments rested with the district justice and thus, under *Monosky*, the result-

---

**4.** *Monosky* overruled prior Superior Court panel decisions to the contrary. *E.g. Commonwealth v. McCutcheon*, 339 Pa.Super. 8, 488 A.2d 281 (1985).

**5.** At that time, magisterial district judges were called "district justices." The title was redes-

ignated by Act 2004–207 § 12, effective January 31, 2005.

**6.** It is well established that "judicial delay can support the grant of an extension of the Rule 600 run date." *Commonwealth v. Trippett*, 932 A.2d 188, 197 (Pa.Super.2007).

ing delay was beyond its control. The *Browne* Court disagreed, observing that the record therein conclusively established that the district attorney's office in that particular county possessed actual control over the scheduling of arraignments. Thus, the *Browne* Court held that *Monosky* did not apply. *Also cf. Commonwealth v. Lopez–Melendez*, 435 Pa.Super. 62, 644 A.2d 1235, 1239 (1994) (delay in processing of defendant's paperwork for ARD by Office of Impaired Driver Program was imputed to Commonwealth since it is Commonwealth's responsibility to oversee the ARD program and office in question was "under the control" of district attorney).

To the extent that our panel decision in *Commonwealth v. Payton*, 449 Pa.Super. 168, 673 A.2d 361 (1996), provides otherwise, I agree with the Commonwealth's position that it is inconsistent with *Monosky*. In *Payton*, a district justice's office was in disarray and had failed to schedule the defendant's preliminary hearing in a timely fashion. Without distinguishing *Monosky*, the panel charged the district attorney with the delay in scheduling the preliminary hearing under *Browne* despite the fact that there was no evidence that the district attorney's office had control over the scheduling of preliminary hearings.

In *Payton*, the panel construed *Browne* as if it had overruled *Monosky*. This con-

struction cannot be sustained as the *Browne* Court expressly distinguished *Monosky*. Specifically, the *Browne* Court stated, "Unlike *Commonwealth v. Monosky, supra*, the delay here was not the fault of the minor judiciary (the district justice), but must be fully attributed to the district attorney's office itself." *Browne, supra* at 906. This statement by *Browne* rests, of course, on the inescapable fact that the circumstances causing the delay at issue in *Browne* were under the Commonwealth's control.[7]

*Monosky* remains viable Supreme Court precedent and was expressly distinguished in *Browne*. I find *Monosky* to be directly applicable in this case because it holds that when the magisterial district judge does not act in conformity with Rule 547 by transmitting the transcript of the preliminary hearing and other related documents to the clerk of courts, any delay resulting from such noncompliance with Rule 547 is judicial delay. The district judge in *Monosky* was solely responsible for that action, as was the case herein. In *Browne*, it was abundantly clear that the district attorney's office, and not the district justice's office, was responsible for arraignment scheduling in the particular county under consideration and, thus, charged with the delay at issue.[8]

In the present case, *Monosky* rather than *Browne* applies, and the delay in the transmittal of the preliminary hearing

---

**7.** Moreover, *Payton* is distinguishable from the present case. In that case, it was established that the district justice's office in question was in disarray. Therefore, the district attorney's office in that case should have had constructive notice that there was a problem and taken steps to ensure Rule 600 was not being violated. The singular misstep at issue herein can hardly be used to impute notice to the Allegheny County District Attorney's Office of a continuing course of conduct by the pertinent magisterial district judge herein. *See* Affidavit of Rebecca D. Spangler,

10/27/09, at 2. Exhibit 1 to Commonwealth's Response to Defendant's Motion to Dismiss Pursuant to Rule 600, 10/28/09. In addition, the crime at issue in *Payton* was not as serious as the one at issue in this case so that the public's interest in prosecution, see *infra*, was not as heightened.

**8.** Of note, the district attorney's office in *Browne* had no system in place for tracking its compliance with Rule 600.

transcript and criminal complaint must be considered judicial delay. The fact that a representative from the district attorney's office was present at Appellee's preliminary hearing, while pertinent to a due diligence analysis, does not obviate the responsibility of the magisterial district judge for the delay at issue. The *Monosky* Court did not consider the presence or absence of a Commonwealth attorney at the preliminary hearing as pertinent to the issue of whether the delay in question constituted judicial delay. The Supreme Court limited its ruling to the facts of the case, stating, "We do not now consider whether unexplained judicial delay, which occurs after the district attorney is aware of the charges against an accused, may justify an extension." *Commonwealth v. Monosky, id.* at 1348. The lack of compliance with Rule 547, standing alone, was the basis for that aspect of the *Monosky* holding.

### Did the District Attorney Exercise Due Diligence?

The secondary prong in a Rule 600(G) analysis involves the question of whether the Commonwealth exercised due diligence. Such an assessment of the Commonwealth's conduct is a fact-specific concept and is determined on a case-by-case basis. *Aaron, supra.* In recognition of the fallibility of all systems designed by man, and allowing for the limitations inherent in all publicly-funded governmental endeavors, our case law has repeatedly emphasized that "[d]ue diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a **reasonable effort** has been put forth." *Id.* at 43 (quoting *Hill, supra* at 588) (emphasis added). Proof of the reasonable effort required by due diligence is met by a preponderance of the evidence standard. *Commonwealth v. Hill,* 558 Pa. 238, 736 A.2d 578 (1999).

Any analysis relating to this issue should not seek to establish perfect vigilance for the law does not require such a strict level of compliance by a district attorney.

In *Monosky,* after determining that the delay in the transmittal of the preliminary hearing transcript was judicial delay and, hence, not the fault of the Commonwealth, the Court addressed the second aspect of the Rule 600(G) inquiry, namely, whether the Commonwealth had exercised due diligence. The *Monosky* Court found that the Commonwealth did exercise due diligence because no district attorney was present at the preliminary hearing; therefore, the Commonwealth had no notice of the case until the preliminary hearing transcript was transmitted to the clerk of courts. Upon notification, the Commonwealth immediately petitioned for an extension of time.

I recognize that the pertinent facts in this matter set this case apart from *Monosky.* Herein, an assistant district attorney was present at the preliminary hearing and, consequently, the Commonwealth must be charged with notice of the existence of the case. *See also Commonwealth v. Baird,* 601 Pa. 625, 975 A.2d 1113 (2009). Thus, the finding of due diligence must hinge upon the reasonableness of the Rule 600 tracking system employed by the Allegheny County District Attorney's Office. *See Browne, supra* at 906 ("due diligence ... imposes on the government the duty to employ simple recordkeeping systems" to ensure its compliance with the mandates of Rule 600).

The record herein establishes that, rather than using a separate internal tracking system, the district attorney's Rule 600 compliance arrangement was dependent at the start upon the magisterial district judge's execution of his judicial responsibility, as articulated by Rule 547, to transmit the preliminary hearing transcript and

related documents to the clerk of courts. The representative of the District Attorney's office testified to that effect at the hearing on Appellee's Rule 600 motion.

The district attorney delineated the specific mechanics of the tracking system utilized by the Allegheny County District Attorney's Office as follows:

> The system that is in place is that the paperwork is sent from the . . . District Justice office, as required by Rule 547. That's the Pennsylvania Rule of Criminal Procedure, requires the District Justice to send that paperwork within five days to the clerk of the court.

> In that paperwork is all of the paperwork for the District Attorney's office. That's the way it's set up under the rule.

> . . . .

> [T]he rule today under 547 requires the district justices to send the paperwork to the Clerk of Courts or Department of Court Records.

> The Court: Apparently that didn't happen.

> [District Attorney]: That did not happen. The paperwork included there is the paperwork to the District Attorney's office. It is not separated at the District Justice level. That paperwork comes in as a whole to the Department of Court Records, and at that time the Department of Court Records personnel separates out the court file and the paperwork that's transmitted to the District Attorney's office.

> And until we receive that paperwork, all of the systems that we have put in place to track formal arraignment dates are not triggered. No one in the Courthouse was aware of the existence of this case until we received the Rule 600 motion. . . .

N.T. Hearing, 10/28/09, at 16–17.

My departure from the majority rests upon my belief that the system in place was a reasonable one. I find nothing unreasonable about the district attorney's reliance upon a governmental office to fulfill its responsibilities pursuant to the rules of criminal procedure. I agree with the majority's legal position that the district attorney's office may not delegate its Rule 600 responsibilities to a coordinate branch of the government. However, the record in this case irrefutably establishes that the Commonwealth did not delegate its responsibilities in that respect.

The Allegheny District Attorney's Office processes approximately 20,000 new criminal cases yearly.[9] Deputy District Attorney (hereinafter "DDA") Rebecca D. Spangler, who has been employed in the district attorney's office for the past fourteen and one-half years, has been the supervising attorney for the pre-trial screening unit since June 1, 2007. In her experience, "in the normal course, pursuant to Rule of Criminal Procedure 547, the court papers are transmitted to the Department of Court Records from the Magisterial District Justice Office[.]" Affidavit of Rebecca D. Spangler, 10/27/09, at 2; Exhibit 1 to Commonwealth's Response to Defendant's Motion to Dismiss Pursuant to Rule 600, 10/28/09. "Upon receipt of those documents, the Department of Court Records electronically creates a CR [criminal record] number which is electronically transmitted to the District Attorney's CIMS computer docketing system and the Department of Court Records then sends the District Attorney's Office the paper copy of the court documents . . . by interoffice

---

9.  *See* www.alleghenycourts.us/pdf/annual% 20 reports/2008.pdf.

mail from which the District Attorney's trial file is created." *Id.* at 3.

Since she has been supervising attorney, DDA Spangler "instituted different procedures for tracking cases once received to facilitate the timely filing of informations." *Id.* However, the systems are dependent upon the paperwork and records having been transmitted from the magisterial district judges to the Department of Court Records so that a CR number can be created and the paper copy of the records received. Once the electronic file and paper records are transmitted, a paper file is created and placed on an attorney screening shelf in order of the formal arraignment date. DDA Spangler monitors the timely removal of files from that shelf by screening attorneys. On a daily basis, DDA Spangler is given a list from the Formal Arraignment Office of all cases listed for formal arraignment. Any instance where the criminal information was not filed is highlighted. A senior screening attorney reviews the daily list of missed formal arraignments, researches the reason the criminal information was not filed, and reports to DDA Spangler daily. DDA Spangler has ordered that the screening intake clerk separate matters involving incarcerated defendants and place them in a separate priority shelf from which screening attorneys are required to complete the criminal information. DDA Spangler periodically receives a list from the Formal Arraignment Office about cases in that office's separate file drawer regarding jailed defendants. She personally researches whether and why the criminal information was not filed.[10]

As can be seen from the discussion above, the district attorney's office had a detailed system in place to ensure that Rule 600 was satisfied. Part of that system relied upon the magisterial district justice to fulfill its affirmative duty pursuant to Rule 547 to transmit the preliminary hearing transcript and criminal complaint within five days of the preliminary hearing. Once that action occurred, as substantiated by DDA Spangler's unrefuted affidavit, the Allegheny County District Attorney's Office diligently ensured the progression of a case through the judicial system.

In concluding that the present system is defective, the majority observes that the Commonwealth "could have kept a list, used a diary, maintained a docket, or employed some other record-keeping system to track this case." Majority at 634. Thus, the majority insists that the district attorney should have established a different tracking system. I do not believe that an imperfect system necessarily equates to a lack of due diligence by the prosecutor, especially if the system has worked until this particular instance. The simple fact remains that there will be human error and failures in any compliance arrangement. Given that the Allegheny County District Attorney's Office monitors 20,000 cases yearly for Rule 600 compliance, with no evidence that such breakdowns routinely occur, the system in place herein is perhaps not perfect, but reasonable.

The majority is requiring a level of vigilance on the part of the Commonwealth that is not required by the law. Due diligence requires only the existence of reasonable effort, and in my view, the arrangement employed herein met that standard by a preponderance of the evidence and satisfied the due diligence require-

---

**10.** After DDA Spangler learned about the default at issue in this case, the Allegheny County District Attorney's Office and the Department of Court Records sought to create a system to identify cases where a defendant has been bound over for trial but the records have not been timely received by the Department of Court Records.

ment of Rule 600(G). Relying upon a co-ordinate branch of government to fulfill its responsibilities pursuant to the rules of criminal procedure as mandated by the Supreme Court of Pennsylvania, in the absence of prior failures by this district judge to comply with Rule 547, does not constitute an absence of due diligence. Hence, I believe that the Commonwealth's Rule 600 tracking scheme was sufficient to comport with the mandate of Rule 600 and case law interpreting it.

The trial court's conclusion that Rule 600 was violated rests upon the following factual paradigm: a district attorney was present at the preliminary hearing, the Commonwealth had notice of this case's existence, and therefore, Rule 600 was violated. The majority employs similar reasoning. In my view, such an approach does not apply the pertinent legal authority to the existing facts. There is controlling precedent holding that the Commonwealth does not violate Rule 600 despite knowledge of a case's existence where the Rule 600 violation results from unexpected judicial delay or delay caused by the executive branch.

In *Commonwealth v. Lewis*, 287 Pa.Super. 64, 429 A.2d 721 (1981), the defendant's case was called to trial prior to the expiration of the Rule 600 rundate. The case was not tried at the Commonwealth's request because it sought the scheduling of defendant's trial with his co-defendant and the co-defendant's attorney was unavailable. The Commonwealth's motion for a continuance was denied by the trial court, which directed the court administrator to call the case for trial as soon as both attorneys were available. The court administrator, who was under the direct supervision of the court rather than the district attorney's office, did not call the case for the next available trial list despite the fact that both defense attorneys and the

district attorney were ready. The matter was placed on a trial list within the parameters of Rule 600 but was not reached. The next available listing date was beyond the defendant's Rule 600 rundate, and the Commonwealth successfully petitioned for an extension of time while the defendant's countervailing petition for dismissal was denied.

On appeal, the defendant claimed that the Commonwealth did not exercise due diligence in attempting to bring him to trial. We disagreed and noted that the reason that the defendant was not timely tried was that the court administrator failed to recall the defendant's case; we further found that the district attorney had no control over the case list. We ruled:

Judicial delay or scheduling may justify an extension of time within which to commence trial. The calendaring of cases is ultimately within the power and responsibility of the trial court. *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976).

Because the court administrator is under the direction of the court and because the court is not a prosecutorial arm of the district attorney's office but is an impartial entity established to administer justice evenhandedly we hold that in the instant case the court administrator's failure to recall the defendant's case cannot be attributed to the Commonwealth but must be attributed to the court. Likewise the court's failure to reach the defendant's case during the ensuing term of court cannot be attributed to any lack of due diligence on the part of the Commonwealth. Because the Commonwealth was indeed prepared to proceed to trial during both the May and June, 1977 court sessions and because the scheduling of defendant's case was entirely within the control of the

court, we hold that the Commonwealth cannot be found to have failed to exercise "due diligence" in proceeding to trial.

*Id.* at 723.

Thus, the district attorney in *Lewis* was considered duly diligent despite the fact that he had actual notice of the case and a potential Rule 600 problem, just as the district attorney herein knew about Appellee's charges because a prosecutor was present at the preliminary hearing. Despite this actual knowledge, we held in *Lewis* that the district attorney had been diligent because the circumstances causing the delay were caused by the court system rather than the prosecutor.

I also find *Commonwealth v. Torres,* 741 A.2d 218 (Pa.Super.1999), analogous. In that case, the defendant's trial was timely scheduled under Rule 600, and the trial court informed the district attorney's office that it had to contact the mayor's office to bring down the defendant at the next trial listing or the defendant would be discharged.

The mayor's office had initiated a priority system regarding writs based upon overcrowding in the city jail. Under that arrangement, the mayor's office ensured that space was available in the city jail only when the district attorney's office notified the mayor's office that the case involved an urgency, thus prioritizing the court's writs. The district attorney refused to comply with the priority system based upon its conclusion that the program conflicted with the court's official writ system. Thus, the mayor's office continued to cancel writs due to a lack of space in the city jail. The defendant's case was not tried because his writ was canceled by the mayor's office based upon a lack of beds. The defendant was discharged.

On appeal, we reversed. The Commonwealth contended that the discharge ruling was erroneous because it occurred prior to the expiration of the Rule 600 rundate and because it had been duly diligent by requesting that the writ for bring down be issued. We first concluded that dismissal was improper because Rule 600 had not been violated. Nevertheless, we also held that even if that rule had been violated, discharge would not have been an appropriate remedy since the Commonwealth was duly diligent. The circumstances causing the delay were beyond its control, even though the Commonwealth had the option of prioritizing the writs. This Court held that:

> the Commonwealth has demonstrated due diligence by utilizing the traditional writ system. Due diligence is a fact-specific concept that is determined on a case-by-case basis. Due diligence does not demand perfect vigilance and punctilious care, but rather a reasonable effort. The Commonwealth arranged for a writ, and the court issued the writ. [The mayor's office], however, refused to honor the writ, instead insisting that the Commonwealth abide by [its] priority system. We reject the notion that asking [the mayor's office], to honor a writ is necessary to demonstrate due diligence; due diligence is demonstrated by preparing a writ.

*Id.* at 221. We refused to "fault the Commonwealth" for adhering to the existing writ system since the new arrangement would cause unforeseeable problems with prioritizing cases. *See also Commonwealth v. Mines,* 797 A.2d 963 (Pa.Super.2002) (Commonwealth exercised due diligence by obtaining writ; fact that writ is ignored does not obviate due diligence finding). Herein, I refuse to fault the Commonwealth with failing to demand that the minor judiciary adhere to its Supreme Court-mandated responsibilities. I reject the notion that asking the magisterial dis-

trict judge to do his job is necessary to demonstrate due diligence.

Finally, I believe that an additional consideration needs to be factored into the decision to discharge Appellee. In *Commonwealth v. Preston*, 904 A.2d 1, 10 (Pa.Super.2006) (*en banc*) (citations omitted), we observed:

The Pennsylvania Supreme Court adopted our speedy trial rules as an administrative means of protecting the constitutional rights embodied in the Sixth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution. However, the Supreme Court's administrative mandate was neither designed nor intended to insulate a criminal accused from good faith prosecution. In the absence of **actual misconduct on the part of the Commonwealth specifically calculated to evade the fundamental speedy trial rights of an accused,** the applicable speedy trial rule must be construed in a manner consistent with society's right to punish and deter crime.

Dismissing criminal charges punishes the prosecutor. It also punishes the public at large as the public has a reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the full extent of the law. In weighing these matters, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused of committing a crime, but also must consider the collective right of the community to vigorous enforcement of the law. Strained and illogical judicial construction adds nothing to our search for justice, but only serves to expand the already bloated arsenal of the unscrupulous criminal determined to manipulate the system.

The record herein admits of no other finding but that the Commonwealth did not commit **actual misconduct in order to evade Appellee's fundamental speedy trial rights.** The assistant district attorney who appeared at Appellee's arraignment walked out of that hearing confident that all necessary papers pertaining to Appellee's prosecution would be forwarded to the clerk of courts within five days. Immediately upon perceiving a problem, the Commonwealth performed significant efforts to move this case along by obtaining a pretrial conference two weeks after receipt of Appellee's motion to dismiss and requesting the next available court date for trial. Appellee was not tried within one year due to a failure by the judicial branch to comply with Rule 547, not because the Commonwealth lacked a reasonable Rule 600 compliance mechanism.

The trial judge herein was quick to punish the prosecutor and to vindicate the speedy trial rights of the accused. But he failed to give any consideration to the public impact of his ruling, which the law requires.

[W]hen considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. *Commonwealth v. Jefferson*, 741 A.2d 222, 225 (Pa.Super.1999), *appeal denied*, 563 Pa. 641, 758 A.2d 1196 (2000). Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. *Id.* In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. *Id.* However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith pros-

ecution through no fault of the Commonwealth. *Id.*

*Aaron, supra* at 42.

The public has a compelling interest in the prosecution of a person identified by his victim as a kidnapper and rapist. Appellee's statements to the victim, which are contained in the complaint, indicate that he has a desire to control women in a sexual setting. No stranger to the criminal justice system, Appellee is classified as a repeat felony offender, as evidenced by his criminal record. When Appellee was a juvenile, he was adjudicated delinquent based upon commission of the crimes of terroristic threats and simple assault "for threatening a female with a knife." N.T. Bail Hearing, 12/2/09, at 4. In 1998, he received a sentence of three and one-half to ten years imprisonment for "a series of events in which he kidnapped women at gun point or attempted to kidnap them." *Id.* at 5. "[I]n one particular incident, [Appellee] confronted a woman at her car, told her to get in the car. The woman said take my car. He said, 'I'm not interested in your car; get in the car.' Clearly he wanted her." *Id.* at 5. In a similar incident, Appellee "confronted a woman in Frick Park at her car. She again said, 'Take my car, take my purse.' He said, 'I'm not interested in that, that's not what I want.'" *Id.* Appellee's criminality has progressed to the point where he stands accused of kidnapping, rape, and a host of other grave offenses.

In *Preston*, we stated that if there was no actual misconduct by the district attorney calculated to evade the defendant's speedy trial rights, Rule 600 must be construed consistently with society's right to punish crime. *Accord Aaron, supra* at 42 ("In determining whether an accused's right to a speedy trial has been violated, consideration **must be given** to society's right to effective prosecution of criminal

cases." (emphasis added)). There is no basis upon which to rest a conclusion that the Commonwealth in this case committed actual misconduct in order to avoid Appellee's speedy trial rights. Thus, consideration must be given to the public interest herein. As can be seen by his prior convictions, Appellee constitutes an extreme danger to women. Neither the trial court nor the majority factored into their analyses the collective public interest, despite a mandate by case law to do so.

In sum, the public is at risk due to Appellee's discharge, the district attorney had a reasonable Rule 600 compliance system in place and was not to any extent attempting to evade Appellee's Rule 600 rights, and the delay at issue was caused by a breakdown in the judicial branch of government. It is my belief that the Rule 600 rundate was extended by excusable delay, *Commonwealth v. Ramos,* 936 A.2d 1097 (Pa.Super.2007) (excusable delay, which is concept embodied in Rule 600(G), serves to extend rundate under Rule 600) (citing *Commonwealth v. Dixon,* 589 Pa. 28, 907 A.2d 468, 475 (2006)), and that Appellee's trial was scheduled within the extended rundate. I find that the trial court abused its discretion because it did not apply the law to the facts and concluded that Appellee had to be discharged merely because a district attorney was present at the preliminary hearing.

I therefore respectfully dissent from the majority's holding in this matter.